# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 6, 2005        Decided August 23, 2006

No. 05-5085

ALICE P. BROUDY, ET AL.,
APPELLANTS

v.

SUSAN H. MATHER, IN HER INDIVIDUAL AND OFFICIAL
CAPACITIES, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv02122)

———

*David J. Cynamon* argued the cause for appellants. With him on the briefs was *Douglas J. Rosinski*.

*Charles W. Scarborough*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Peter D. Keisler*, Assistant General Counsel, *Kenneth L. Wainstein*, U.S. Attorney, and *Barbara L. Herwig*, Attorney.

Before: GARLAND, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Between 1945 and 1962, hundreds of thousands of members of the United States armed forces were allegedly exposed to dangerous levels of atomic radiation: about 220,000 while serving as occupying forces in Hiroshima and Nagasaki, Japan at the end World War II and another 195,000 as a result of their participation in tests conducted more recently by the military closer to home. Many of these soldiers later became sick, and they sought to link their health problems to their military service. But this case is not about whether they should have received Government compensation for their sicknesses. Rather, according to the plaintiffs' complaint, it is about whether Government officials denied them a constitutional right of meaningful access to administrative proceedings before the Department of Veterans Affairs ("VA").

We conclude that the District Court was correct to dismiss the plaintiffs' claims. Plaintiffs cannot prove any set of facts consistent with the allegations of their complaint that will demonstrate that the defendants denied them a meaningful opportunity to pursue their claims for compensation.

## I.

Because we are reviewing the District Court's decision to dismiss the plaintiffs' complaint, we must presume the allegations in the complaint are true. *Doe v. Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). We set forth those allegations below.

Following the 1945 atomic bombings of Hiroshima and Nagasaki, hundreds of thousands of American troops entered Japan as occupying forces. Beginning that same year and continuing through 1962, the United States tested atomic weapons in New Mexico, Nevada, and the Pacific Ocean. One purpose of the tests was to determine the effects of atomic

explosions on military operations, personnel, and equipment. Participants were ordered to engage in a series of dangerous activities, without full knowledge of the risks. For example, plaintiffs allege that they were ordered to "board grossly contaminated naval vessels within a few hours of a nearby underwater atomic detonation; swim and dive in a lagoon . . . contaminated with radioactive fallout . . . ; live and work on ships . . . grossly contaminated with radioactive material . . . ; lie in open trenches within a few hundred yards of an atomic explosion; charge directly towards and through 'ground zero' within minutes of an atomic explosion; conduct extended training in areas contaminated by fallout from dozens of atomic detonations; and fly through roiling clouds of radioactive debris within minutes of an atomic detonation." Both groups—those who served as occupation forces in Japan and those who participated in military tests—were exposed to potentially dangerous levels of atomic radiation.

During this period, the military performed medical tests on many, if not all, of these veterans. Records of these tests accurately describe the levels of radiation to which each veteran was exposed. Sometime after the Government collected the data from these tests—it is unclear from the complaint exactly when—the nine named plaintiffs (or the survivors of these plaintiffs)[1] became sick and eight of the nine filed applications for benefits with the VA[2]. The ninth plaintiff, Kathy

---

[1] The complaint named ten plaintiffs, but one, Theodore J. Dvorak, did not file a notice of appeal and his claims are not before us.

[2] A veteran who becomes ill can file an application for benefits with the VA. Sections 1110 and 1131 of Title 38, United States Code, provide that, subject to certain conditions not relevant here, the VA will pay compensation to veterans "[f]or disability resulting from personal injury suffered or disease *contracted in line of*

Jacobovitch, has not yet filed a claim on behalf of her deceased father. Upon receiving plaintiffs' applications, the VA, in accordance with its regulations, *see* 38 C.F.R. § 3.311(a)(1), (a)(2)(I), (a)(2)(ii),[3] requested the test results for these plaintiffs

---

*duty*, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. § 1110 (emphasis added) (describing the Government's obligation to compensate wartime veterans), § 1131 (emphasis added) (describing the Government's obligation to compensate peacetime veterans). The standard for determining whether a veteran's survivor is entitled to benefits is similar: "When any veteran dies after December 31, 1956, from *a service-connected or compensable disability*, the Secretary shall pay dependency and indemnity compensation to such veteran's surviving spouse, children, and parents." *Id*. § 1310(a) (emphasis added).

[3] These subsections provide, in relevant part:

(a) Determinations of exposure and dose—

(1) Dose assessment. In all claims in which it is established that a radiogenic disease first became manifest after service and was not manifest to a compensable degree within any applicable presumptive period as specified in § 3.307 or § 3.309, and it is contended the disease is a result of exposure to ionizing radiation in service, an assessment will be made as to the size and nature of the radiation dose or doses. . . .

(2) Request for dose information. Where necessary pursuant to paragraph (a)(1) of this section, dose information will be requested as follows:

(i) Atmospheric nuclear weapons test participation claims. In claims based upon participation in atmospheric nuclear testing, dose data will in all cases be requested from the appropriate office of the Department of Defense.

from the Department of Defense ("DoD"). But DoD never gave these results to the VA. According to the plaintiffs, the defendants intentionally covered them up.

In lieu of the actual test results, the DoD sent the VA "dose reconstructions" for each of the plaintiffs, which it is required to do when records of test results are unavailable. 32 C.F.R. § 218.1(d)(3). The DoD and the VA use dose reconstructions to approximate a veterans' level of exposure to radiation by estimating the "size, type, design, and yield of the particular atomic device; [the] time, distance, and shielding from the detonation; the decay, distribution, and deposition of over 200 different radionuclides and fission products; and the potential radiation exposure pathways." Joint Appendix ("J.A.") 32. According to the plaintiffs, dose reconstructions are seriously flawed. They minimize the veteran's level of exposure by assuming, for example, that all who worked in contaminated areas wore protective clothing, even though photographs evidence that was not so. Consequently, they "produce[] results having little, if any, relation to the radiation dose actually received by the individual."

Using these allegedly faulty dose reconstructions, VA officials concluded that six of the eight plaintiffs who have filed a claim had not demonstrated that their illnesses "resulted from exposure to radiation in service," 38 C.F.R. § 3.311(c)(1)(I), and, as a result, rejected (or partially rejected) their claims. The VA has yet to rule on the claims of the two other plaintiffs who

---

(ii) Hiroshima and Nagasaki occupation claims. In all claims based on participation in the American occupation of Hiroshima or Nagasaki, Japan, prior to July 1, 1946, dose data will be requested from the Department of Defense.

have filed applications for benefits. As mentioned, the ninth plaintiff, Kathy Jacobovitch, has not yet filed a claim. She intends to do so when she obtains the actual dosage records.

In 2002, the plaintiffs filed a putative class action lawsuit in the District Court against two groups of Government officials. The first group consisted of officials who allegedly covered up the actual dosage data: Steven M. Younger, the Director of the Defense Threat Reduction Agency ("DTRA"), the agency within the Department of Defense with responsibility for preparing the dose reconstructions; Michael Schaeffer, a program manager in the DTRA's Technology Development Directorate; and other unnamed Government officials. The second group consisted of officials who allegedly assisted in the cover-up and knowingly used the flawed dose reconstructions: Susan Mather, the VA's Chief Public Health and Environmental Hazards Officer; Neil Otchin, the VA's Clinical Matters Program Chief; Robert Roswell, the VA's Under Secretary for Health; and other unnamed Government officials. The complaint alleged that both groups of defendants have violated the plaintiffs' constitutional right of access to the courts. In the plaintiffs' view, this right of access extends to veterans benefits proceedings and prohibits officials from acting in a way that either blocks or makes meaningless access to those proceedings. As relief, plaintiffs sought (1) a declaration that the actions taken by the defendants were unconstitutional, (2) immediate release of all relevant records and documents, (3) an injunction prohibiting the defendants from withholding records of actual dosage data, (4) compensatory and punitive damages, (5) costs and reasonable attorneys' fees, and (6) additional relief as the District Court deemed proper and just.

The defendants moved to dismiss the plaintiffs' claims and made three arguments relevant here. First, they argued that the District Court did not have jurisdiction to hear plaintiffs' claims

because 38 U.S.C. § 511(a) provides that only the Board of Veterans' Appeals, the Court of Appeals for Veterans' Claims, the Federal Circuit, and the United States Supreme Court have jurisdiction to "review" "decision[s] of the Secretary [of the VA] as to" any "question of law [or] fact necessary to a decision by the Secretary under a law that affects the provision of benefits." Second, the defendants argued that a claim for damages against the Government officials under the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971), should have been barred in this case because Congress has already created a comprehensive administrative scheme to compensate veterans. Third, the defendants argued that they were entitled to qualified immunity because the allegations in the plaintiffs' complaint failed to state a constitutional claim for denial of access.

The District Court held it lacked jurisdiction under 38 U.S.C. § 511(a). As an alternative ground, the District Court held that plaintiffs were barred from bringing a *Bivens* claim for damages against the Government officials.

A few days before the District Court issued its decision, another District Court in this Circuit reached opposite conclusions in a case involving substantially similar facts and legal issues. *Vietnam Veterans of Am., Inc. v. McNamara*, No. 02-2123, 2003 WL 24063631 (D.D.C. Sept. 30, 2003). The *Vietnam Veterans* Court held that § 511(a) posed no jurisdictional bar to its hearing the denial-of-access claims raised by the plaintiffs in that case and that plaintiffs in that case had stated a claim for relief under *Bivens*. *Id*. at *4-6. In light of the contrary decision in *Vietnam Veterans*, the plaintiffs in this case moved for reconsideration. The District Court granted the motion and held, consistent with *Vietnam Veterans*, that neither § 511(a) nor *Bivens* barred the plaintiffs' pursuit of

denial-of-access claims.  *Broudy v. Mather*, 335 F. Supp. 2d 1, 4-6 (D.D.C. 2004).

But that was not the end of the matter.  After the District Court's decision on reconsideration, the defendants filed a "Motion for Ruling on Defense of Qualified Immunity" reminding the District Court that the defendants had also sought to dismiss the complaint based upon qualified immunity. Additionally, the defendants argued, for the first time, that they were entitled to absolute immunity.  The District Court agreed and dismissed the case, holding that the defendants enjoyed both qualified and absolute immunity: absolute immunity because they "'perform[ed] functions closely associated with the judicial process'" *Broudy v. Mather*, 366 F. Supp. 2d 3, 9, 11 (D.D.C. 2005) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)), and qualified immunity because the plaintiffs had failed to allege a violation of a clearly established constitutional right, *id*. at 11-13.

Plaintiffs filed a timely notice of appeal.  They argue that the defendants were not entitled to either qualified or absolute immunity.  The defendants respond that both immunities apply, the District Court did not have jurisdiction to hear the case under 38 U.S.C. § 511(a), and, in any event, the plaintiffs failed to state a claim under *Bivens* because "special factors counsel hesitation" towards imposing liability for the type of denial of access the plaintiffs allege.

## II.

We begin, as we must, with the question whether the District Court had jurisdiction to consider the plaintiffs' claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (holding that courts must first decide "as a threshold matter" whether there is jurisdiction to hear a case).  In their

complaint, the plaintiffs asserted that the District Court had jurisdiction pursuant to the general federal question jurisdiction statute, 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The defendants argue, however, that another statute, 38 U.S.C. § 511(a), barred the District Court from hearing the plaintiffs' claims. Section 511(a) states:

> The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a).[4]

---

[4] Subsection (b) provides four exceptions, none of which would allow a federal district court to review the kind of decisions of the Secretary at issue here. The first exception gives the Federal Circuit jurisdiction over Administrative Procedure Act review of VA rulemaking. 38 U.S.C. § 511(b)(1). The second gives federal district courts jurisdiction over suits involving Veterans' Group Life Insurance, National Service Life Insurance, and U.S. Government life insurance. *Id*. § 511(b)(2). The third gives federal district courts jurisdiction over suits involving VA housing and small business loans. *Id*. § 511(b)(3). The fourth, *id*. § 511(b)(4), allows veterans or their dependents or survivors to appeal adverse decisions to the Board of Veterans' Appeals, *id*. § 7104(a), then to the Court of Appeals for Veterans' Claims, *id*. § 7252(a), and then to the Federal Circuit, *id*. § 7292(c). Finally, if the Federal Circuit denies their claims, veterans

In the defendants' view, § 511(a) prevents a district court from exercising jurisdiction over any case that would require it to decide a "question of law [or] fact" that arises "under a law that affects the provision of benefits." Put another way, the defendants argue that § 511(a) gives the Secretary *exclusive* jurisdiction to decide these questions. Because the plaintiffs' denial-of-access claims would require the District Court to decide factual and legal issues regarding the provision of veterans benefits, the defendants contend that § 511(a) should have prevented the District Court from exercising jurisdiction over such claims.

This argument misreads the statute. Section 511(a) does not give the VA *exclusive* jurisdiction to construe laws affecting the provision of veterans benefits or to consider all issues that might somehow touch upon whether someone receives veterans benefits. Rather, it simply gives the VA authority to consider such questions when making a decision about benefits, *see* § 511(a) ("[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans"), and, more importantly for the question of our jurisdiction, prevents district courts from "review[ing]" the Secretary's decision once made, *see id.* (except as provided by subsection (b), "*the decision of the Secretary* as to any such question shall be final and conclusive and may not be *reviewed* by any other official or by any court") (emphasis added).

Our precedent, although not addressed by the plaintiffs, provides as much. In *McKelvey v. Turnage*, 792 F.2d 194 (D.C. Cir. 1986), *aff'd on other grounds*, *Traynor v. Turnage*, 485 U.S. 535 (1988), we held that § 211(a), the predecessor to § 511(a),

---

or their dependants can petition the Supreme Court for certiorari. *Id.*

11

did not bar a District Court suit challenging the legality of certain VA regulations because the Secretary had not actually decided the issue before the District Court.[5] In that case, a veteran named James McKelvey asked the VA for an extension to the limitations period for filing for educational assistance benefits. VA regulations allow for extensions for veterans who were unable to use their benefits within ten years of their discharge from the armed services "because of a physical or mental disability which was not the result of such veteran's own willful misconduct." *Id*. at 196 (citing 38 U.S.C. § 1662(a)(1) (1982)). McKelvey argued that his limitations period should have been extended because he was an alcoholic. *Id*. The VA refused, citing a regulation that describes most forms of alcoholism as a "result of willful misconduct." *Id*. at 197. McKelvey sued, arguing that the VA's regulation was illegal under the Rehabilitation Act, which he argued prohibits discrimination on the basis of alcoholism. In response, the VA argued that § 211(a) barred the district court from exercising jurisdiction.

We rejected the VA's argument, holding that § 211(a) did not preclude review because

---

[5] Section 211(a), formerly codified at 38 U.S.C. § 211(a) (1982), read in pertinent part:

> [T]he decisions of the Administrator [of the Veteran's Administration] on any question of law or fact under any law administered by the Veteran's Administration providing benefits for veterans and their dependants or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

the VA itself had never decided the question McKelvey's Rehabilitation Act plea raises . . . . Section 211(a) preclusion of review depends, at a minimum, on the satisfaction of this condition: the petitioner's claim must have been resolved by an *actual decision of the Administrator*. At the time of the initiation of this suit, the Administrator had made no decision concerning the impact of the Rehabilitation Act on McKelvey's time extension application.

*Id*. at 198 (emphasis added; quotation marks and citation omitted).

More recently, although again not brought to our attention by the plaintiffs, the Federal Circuit has similarly rejected the defendants' argument of exclusive VA jurisdiction where a claim is otherwise properly presented in the District Court but somehow involves a law affecting the provision of benefits. In *Hanlin v. United States*, 214 F.3d 1319 (Fed. Cir. 2000), a veteran and his lawyer executed a written fee arrangement, a copy of which had been sent to the Secretary, which provided that the lawyer would receive twenty percent of any benefits awarded to the veteran and authorized the Secretary to pay the fee directly to the law firm. The VA, however, mistakenly sent all the benefits to the veteran. *Id*. at 1320. Apparently unable to collect from his client, the lawyer sued the VA in the Court of Federal Claims arguing that the fee agreement created an implied-in-fact contract with the United States. The Court of Federal Claims held that it lacked jurisdiction under § 511(a) because the claim arose under "a law that affects the provision of benefits" and therefore could have been decided only by the VA in a benefits proceedings. *Id*. at 1320-21. The Federal Circuit rejected this reasoning, reversed the trial court, and

remanded the case so that the lawyer could pursue his claim against the VA in federal court:

> We do not read the statute to require the Secretary, *and only the Secretary*, to make all decisions related to laws affecting the provision of benefits. Rather, once the Secretary has been asked to make a decision in a particular case . . . , 38 U.S.C. § 511(a) imposes a duty on the Secretary to decide all questions of fact and law necessary to a decision in that case. Although Mr. Hanlin's claim arises under 38 U.S.C. § 5904(d), which is 'a law that affects the provision of benefits' within the meaning of 38 U.S.C. § 511(a), there is no language in 38 U.S.C. § 511(a) requiring an attorney in Mr. Hanlin's position to file a claim for fees pursuant to 38 U.S.C. § 5904(d) with the VA or to otherwise pursue a remedy through the VA administrative process. Therefore, 38 U.S.C. § 511(a) does not require the Secretary to address such a claim and thus *does not provide the VA with exclusive jurisdiction* over Mr. Hanlin's claim.

*Id*. at 1321 (emphases added and internal citation omitted).

These cases make clear that, while the Secretary is the sole arbiter of benefits claims and issues of law and fact that arise during his disposition of those claims, district courts have jurisdiction to consider questions arising under laws that affect the provision of benefits as long as the Secretary has not actually decided them in the course of a benefits proceeding. As the Federal Circuit stated in *Hanlin*, we "do not read the statute to require the Secretary, *and only the Secretary*, to make all

decisions related to laws affecting the provision of benefits." *Id.* (emphasis added). To the contrary, § 511(a) prevents district courts from hearing a particular question only when the Secretary has "actual[ly] deci[ded]" the question. *McKelvey*, 792 F.2d at 198. Where there has been no such decision, § 511(a) is no bar. *Id.*

We are thus left with the question whether the Secretary has made an "actual decision" on any issues that the parties are asking the District Court to decide here. The defendants' brief points only to two such questions: (1) "whether the information allegedly withheld impaired or foreclosed" the veterans benefits claims, and (2) "whether the radiation dosage exposure estimates produced by the DTRA defendants and relied upon by the VA defendants fail to consider relevant information in the federal government['s] [sic] possession [but that the Secretary did not have] and produce scientifically baseless and erroneous results." Appellees' Br. at 25 (quotation marks and citation omitted). But the Secretary has never decided these questions. No one argues that they were briefed and argued before the Secretary. Nor does anyone argue that the Secretary explicitly considered them when he denied the claims of six of the nine plaintiffs. The defendants argue only that the Secretary *should be deemed* to have decided all issues that could have affected the outcome of the underlying benefits proceeding, even if those issues were not explicitly raised before him. To support their argument, the defendants rely on statements taken from two of our cases, *Price v. United States*, 228 F.3d 420 (D.C. Cir. 2000), and *Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005).

In *Price*, a veteran alleged that the VA had "wrongfully failed to reimburse him for certain medical expenses." 228 F.3d at 421. We held that § 511(a) barred the District Court from hearing this claim because, in order for the court to decide the issue presented—whether the VA wrongfully failed to reimburse

Price—it would have needed to decide that he was entitled to reimbursement in the first place. But the Secretary, in the benefits proceeding, had already decided that Price was not entitled to benefits. We held, therefore, that § 511(a) precluded the District Court from hearing the veteran's claim because it would require the Court to review the Secretary's decision. *Id*. We then stated—and this is the language the defendants' focus upon—that "[b]ecause a determination whether the VA acted in bad faith or with negligence would require the district court to determine first *whether the VA acted properly in handling Price's request for reimbursement*, judicial review is foreclosed by 38 U.S.C. § 511(a)." *Id*. at 422 (emphasis added).

We used that language again last year in *Thomas*. Thomas claimed that the VA had "failed to render [to him] appropriate medical care services" and had also "den[ied] [him] needed . . . medical care treatment . . . [,] caus[ing] [him] severe emotional distress." *Thomas*, 394 F.3d at 975. We held that the District Court was without jurisdiction to hear these claims because they would have required it to decide whether Thomas was entitled to medical treatment in the face of a prior VA determination that he was not. *Id*. Because the review of these decisions was explicitly prohibited by § 511(a), we dismissed these claims. *Id*. We quoted from *Price*, stating that our task was to "determine whether adjudicating Thomas's claims would require the district court 'to determine first whether the VA *acted properly* in handling' Thomas's benefits request." *Id*. at 974 (quoting *Price*, 228 F.3d at 422) (emphasis added).

The defendants, trying to claim the benefit of our decisions in *Price* and *Thomas*, argue that if the District Court exercises jurisdiction here, it would need to determine whether the VA "acted properly" in handling the claims of at least those plaintiffs who were denied full benefits, something forbidden by § 511(a). Not so. In *Price* and *Thomas*, if the District Court had

exercised jurisdiction, it would have needed to "review" the Secretary's "actual decisions" that veterans were not entitled to the benefits they sought. Here, by contrast, no such "review" is required. Unlike the plaintiffs in *Price* and *Thomas*, the plaintiffs in this case are not asking the District Court to decide whether any of the veterans whose claims the Secretary rejected are entitled to benefits. Nor are they asking the District Court to revisit any decision made by the Secretary in the course of making benefits determinations. The Secretary never considered or decided the two issues the defendants focus upon—"whether the information allegedly withheld impaired or foreclosed" the veterans benefits claims and "whether the radiation dosage exposure estimates . . . fail to consider relevant information" that the Secretary did not have. It can therefore hardly be said that these issues were "necessary to a decision by the Secretary." 38 U.S.C. § 511(a). The "acted properly" language in *Price* and *Thomas* upon which the defendants rely cannot apply where the Secretary has not "acted" at all on the issues before us. Thus, the District Court properly exercised jurisdiction over the claims of the nine named plaintiffs in this case.

## III.

Having satisfied ourselves that the District Court had federal subject matter jurisdiction to hear the plaintiffs' claims, we turn to the merits of the plaintiffs' claims, which the District Court dismissed on the grounds of absolute and qualified immunity. Because it believed that the defendants "perform[ed] functions closely associated with the judicial process," *see Cleavinger*, 474 U.S. at 200, the District Court held that these officials were entitled to the same absolute immunity judges enjoy for their official acts. *Broudy*, 366 F. Supp. 2d at 11. As an alternative holding, the District Court dismissed the plaintiffs' claims on qualified immunity grounds, holding that they failed to allege the denial of any constitutional right, let

alone a "clearly established" constitutional right. *Id.* at 11-13; *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). The plaintiffs failed to allege what the District Court held was an indispensable element in their claim for denial of a constitutional right of access arising out of a cover-up: that the defendants' "affirmative misrepresentations"—the cover-up conduct that allegedly kept the plaintiffs from pursuing their benefits claims before the VA—took place before, rather than after, the plaintiffs had filed their claims. *Broudy*, 366 F. Supp. 2d at 12-13.

On appeal, the plaintiffs challenge the District Court's determination that the defendants enjoyed both absolute and qualified immunity. They argue first that the defendants are not entitled to absolute immunity because they do not "perform functions closely associated with the judicial process." They argue that the defendants are not entitled to qualified immunity because even assuming *arguendo* that a denial-of-access claim cannot be based on a post-filing cover-up, their complaint did in fact allege that the cover-up took place before the plaintiffs filed their claims. Specifically, they point to one of the plaintiffs, Kathy Jacobovitch, who had not yet filed a claim, but who nonetheless alleged that she "ha[d] been hampered in her efforts to file for benefits" based on the defendants' allegedly unlawful conduct. In response, the defendants retreat from the District Court's conclusion and do not argue, as the District Court held, that the plaintiffs failed to make this assertion in their complaint. Instead, the defendants argue, among other things, that the District Court correctly dismissed the complaint on other grounds—specifically, that plaintiffs failed to state a claim for

denial of access because their right to meaningful access has not, in fact, been completely foreclosed.

We review the grant of a motion to dismiss *de novo* and "may affirm the dismissal of a complaint on different grounds than those relied upon by the district court." *Amgen, Inc. v. Smith*, 357 F.3d 103, 108, 111 (D.C. Cir. 2004). To begin, we note that if the District Court was correct that the plaintiffs' complaint failed to state a claim for denial of access, it could have based its dismissal on Federal Rule of Civil Procedure 12(b)(6) rather than the more complicated and, in this instance at least, unnecessary analysis called for by its resort to the law of absolute and qualified immunity. *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 440 (1993). Our discussion and ultimate disposition of this case will focus solely on whether the plaintiffs have stated a denial-of-access claim. Because we conclude that they have not, we need not consider the sometimes nuanced issues involved with qualified immunity. Nor do we need to consider whether the District Court properly held that the defendants were entitled to absolute immunity. If, as we conclude, the plaintiffs have failed to state a denial-of-access claim, the complaint must be dismissed regardless of whether defendants have absolute or qualified immunity.

In reviewing the dismissal of a complaint under Rule 12(b)(6), we are to "accept the allegations of the complaint as true, draw[] all inferences in the plaintiff's favor, and [] affirm 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Croixland Properties Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989). We therefore look to whether the plaintiffs can prove "any set of facts . . . consistent with the allegations" in

their complaint, *id.*, that will entitle them to relief. To make this determination, we must address two issues: (1) the elements the plaintiffs must prove to prevail on their denial-of-access claims, and (2) whether the plaintiffs can, under "any set of facts . . . consistent with their allegations" prove those elements.

### A. *The Elements of a Denial-of-Access Claim.*

The Supreme Court has long recognized that citizens have a right of access to the courts. *See Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907) ("[T]he right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship. . . ."). The Supreme Court has grounded the right at various times in different provisions of the Constitution: the "Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) ("*Harbury III*") (citations omitted). Furthermore, "[t]he right not only protects the ability to get into court, but also ensures that such access be adequate, effective, and meaningful." *Harbury v. Deutch*, 233 F.3d 596, 607 (D.C. Cir. 2000) ("*Harbury I*") (quotation marks and citations omitted), *reh'g denied* 244 F.3d 956 (D.C. Cir. 2001) (*per curiam*) ("*Harbury II*").[6]

---

[6] The plaintiffs argue that the constitutional right of access to the courts extends to administrative proceedings. *Cf. California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("[T]he right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition.") (internal citations omitted). Because we conclude that the

"[T]wo categories" of "denial of access" cases emerge from the case law of the Supreme Court and the Courts of Appeals. *Harbury III*, 536 U.S. at 413. In the first category,

> the essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing the claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed.

*Id*. The Court calls these "forward-looking claims." *Id*. at 414 n.11. Examples include a prisoner seeking access to a law library for use in preparing a court filing, *id*. at 413 (citing *Lewis v. Casey*, 518 U.S. 343, 346-48 (1996); *Bounds v. Smith*, 430 U.S. 817, 828 (1977)), or an indigent plaintiff seeking waiver of a filing fee that he cannot afford to pay, *id*. (citing *MLB v. SLJ*, 519 U.S. 102, 106-07 (1996); *Boddie v. Connecticut*, 401 U.S. 371, 372 (1971)).

"The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases *that cannot now be tried* (or tried with all material evidence), no matter what official action may be in the future." *Id*. at 413-14 (emphasis added). The Court explained:

> These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not

---

plaintiffs fail to state a denial-of-access claim for other reasons, we need not address this issue.

> have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in *no other suit* in the future.

*Id*. at 414 (emphasis added). The Court calls these "backward-looking claims." *Id*. at 414 n.11. Examples include cases where a cover-up "caused the loss or inadequate settlement of a meritorious case," *id*. at 414 (citing *Foster v. Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994); *Bell v. Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984)), or where a cover-up caused "the loss of an opportunity to sue" because it extended through the limitations period, *id*. (citing *Swekel v. City of River Rouge*, 119 F.3d 1259, 1261 (6th Cir. 1997)).

Although the plaintiffs use the bulk of their arguments on appeal to discuss backward-looking claims, they appear to have brought both forward-looking and backward-looking claims against the defendants. We say "appear" because neither the plaintiffs' complaint nor the briefs follow the approach of the Supreme Court in *Harbury III* to specifically identify claims as "backward-looking" or "forward-looking." But the complaint does seek the "immediate[] release . . . [of] all records and documents, of whatever type or classification and wherever located, that in any way contain information regarding the radiation exposure received by any Atomic Veteran, or that could be used to produce a realistic and scientifically-valid reconstruction of such exposure." This seems to raise what *Harbury III* would call a forward-looking claim. By retrieving these documents, the plaintiffs hope to be able to meaningfully "pursue a separate claim for relief once the frustrating condition has been removed." *Harbury III*, 536 U.S. at 413.

The complaint also alleges that the cover-up denied six of the nine plaintiffs a meaningful opportunity to seek benefits on their underlying claims. In the view of the plaintiffs, these opportunities have now been permanently lost. These allegations seem to raise what *Harbury III* would call backward-looking claims. The "ultimate object" of these claims appears to be "judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id*. Because plaintiffs' complaint and briefs focus primarily on these backward-looking claims, we look first to their necessary elements.

### 1. *Backward-looking claims.*

The only case in our Circuit to address a backward-looking denial-of-access claim is *Harbury I*, 233 F.3d 596. Because that decision, our opinion denying rehearing, *Harbury II*, 244 F.3d 956, and the Supreme Court's disposition on review, *Harbury III*, 536 U.S. 403, are central to our analysis, we describe them in some detail.

In *Harbury I*, Jennifer Harbury, a United States citizen and the widow of a murdered Guatemalan citizen, claimed that officials from the State Department and the National Security Counsel denied her meaningful access to the courts. She alleged that these officials intentionally deceived her about what they knew about her husband, who had been kidnapped by Guatemalan army forces affiliated with the Central Intelligence Agency. Before her husband's death, Harbury repeatedly contacted State Department and National Security Council officials to try to obtain information about his condition. According to Harbury, even though these officials knew that her husband had been captured alive, they "intentionally misled [her, by making] deceptive statements and omissions, into believing that concrete information about her husband's fate did

not exist." *Harbury I*, 233 F.3d at 600 (quotation marks and internal citation omitted). Had these officials not misled her, she argued on appeal, she could have filed a tort claim for intentional infliction of emotional distress and, as relief, sought an injunction requiring the officials to protect her husband. *Id*. at 609. The District Court dismissed Harbury's denial-of-access claims, concluding that she had failed to allege that the defendants violated a clearly established constitutional right. *Harbury v. Deutch*, No. 96-00438, 1999 WL 33456919, at *9-10 (D.D.C. Mar. 23, 1999).

On appeal, we reversed and held that Harbury had alleged a violation of a clearly established constitutional right because she alleged that the defendants' actions prevented her from obtaining an injunction "in time to save her husband's life." *Harbury I*, 233 F.3d at 609. "Because his death *completely foreclosed* this avenue of relief"—an injunction that could have prevented the death of her husband—we allowed Harbury's denial-of-access suit to proceed. *Id* (emphasis added); *see also Harbury II*, 244 F.3d at 957 ("The panel opinion permits Harbury to bring her access to courts claim now only because, if the facts she pleads are correct . . . , defendants' actions 'completely foreclosed' one of her primary avenues of relief.") (citation omitted).

On review in *Harbury III*, 536 U.S. 403, the Supreme Court reversed, holding that we erred two ways. First, the Court disagreed with our conclusion that Harbury had identified a "non-frivolous," "arguable" underlying claim. The underlying claim, the Court held, must be described in the complaint: "[T]he underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation." *Id*. at 415.[7] Although Harbury had argued successfully in this Court that absent a cover-up, she "would have brought an action for intentional infliction of emotional distress," presumably alleging that the mistreatment of her husband had injured her, she raised this "underlying claim" only on appeal and not in her complaint. *Id*. at 418-19. That, the Court held, was insufficient. The "underlying claim," the Court concluded, is essential to a well-pled complaint; otherwise the plaintiff's claim for denial of access must fail. Because Harbury's "complaint failed to identify the underlying cause of action that the alleged deception had compromised," it "did not come even close to stating a constitutional claim." *Id*. at 418.

The Court found Harbury's complaint deficient in yet another way. Her complaint did not seek a particular type of remedy that the Court concluded is essential to a backward-looking denial-of-access claim:

> [T]he complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

---

[7] *See also Harbury III*, 536 U.S. at 416 ("Like any other element of an access claim, the underlying cause of action . . . must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."); *id*. ("the predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope").

*Id*. at 415. The purpose of this requirement is "to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." *Id*. at 416. Just as the underlying claim must be described "in accordance with Federal Rule of Civil Procedure 8(a) . . . as if it were being independently pursued," "a like plain statement [in the complaint] should describe any remedy available under the access claim and presently unique to it." *Id*. at 417-18.

Harbury failed to seek any remedy "that could not be obtained on an existing claim." *Id*. at 421. She could still obtain damages through her tort claim against those who tortured her husband. Damages, therefore, were not a "remedy . . . presently unique" to her access claim. *Id*. at 417-18. Perhaps recognizing that fact, Harbury argued that, but for the cover-up, she would have sought an injunction that might have saved her husband's life. *Id*. at 421-22. But although an injunction might have prevented her husband's death, it was not "available under the access claim," the Court noted, because Harbury's husband had, tragically, already died. *Id*. at 417-18, 422.

*Harbury III*, and the portions of our decisions in *Harbury I* and *II* which have not been disturbed,[8] evidence at least three elements necessary to prove a backward-looking denial-of-access claim: an arguable underlying claim, complete foreclosure, and causation. First, to state a denial-of-access claim, plaintiffs must identify "in the complaint" a "non-

---

[8] *See Action Alliance of Senior Citizens of Greater Philadelphia v. Sullivan*, 930 F.2d 77, 83 (D.C. Cir. 1991) ("Although the Supreme Court vacated our prior opinion, it expressed no opinion on the merit of these holdings. They therefore continue to have precedential weight, and in the absence of contrary authority, we do not disturb them.") (citations omitted).

frivolous," "arguable" underlying claim. *Id*. at 415. Second, and dispositive in this case, the plaintiffs must show that they have been denied a remedy for their underlying claims. This remedy must have been "completely foreclosed." *Harbury I*, 233 F.3d at 610; *see also Harbury II*, 244 F.3d at 957. Thus, if relief on the underlying claims is still available in a "suit that may yet be brought," *Harbury III*, 536 U.S. at 415, or a "presently existing claim," *id*. at 416, the plaintiffs cannot meet this element of their claims. *See also id*. at 413-14 (stating that backward-looking denial-of-access claims must identify an underlying claim that "cannot now be tried (or tried with all material evidence) no matter what official action may be in the future"). Third, the plaintiffs must show that it was the defendants' actions that have cut off their remedy. *See Harbury II*, 244 F.3d at 957 ("The panel opinion permits Harbury to bring her access to courts claim now only because, if the facts she pleads are correct . . . *defendants' actions* completely foreclosed one of her primary avenues of relief.") (citation and quotation marks omitted.).

### 2. *Forward-looking claims.*

The Supreme Court's jurisprudence on forward-looking claims reveals at least two necessary elements: an arguable underlying claim and present foreclosure of a meaningful opportunity to pursue that claim. First, just as with backward-looking claims, a plaintiff who alleges a forward-looking claim must plead a non-frivolous, arguable underlying claim. *See Lewis v. Casey*, 518 U.S. 343, 353 (1996) (holding that inmate bringing a forward-looking claim must point to a "nonfrivolous legal claim [that was] being frustrated [or] impeded"); *see also Harbury III*, 536 U.S. at 415 ("even in forward-looking prisoner class actions to remove roadblocks to future litigation, the named plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim").

Second, a plaintiff who alleges a forward-looking claim must be "presently den[ied] an opportunity to litigate." *Harbury III*, 536 U.S. at 413. Such plaintiffs must show that a meaningful opportunity to pursue their underlying claims was "completely foreclosed." *Harbury I*, 233 F.3d at 609; *Harbury II*, 244 F.3d at 957.[9] In the prison context, for example, prisoners bringing a forward-looking claim must show an "actual injury to [their] litigation." *Crawford-El v. Britton*, 951 F.2d 1314, 1321 (D.C. Cir. 1991). No such injury exists if a plaintiff can still meaningfully press his underlying claims because the plaintiff is not being "presently den[ied] an opportunity" to meaningfully litigate, even in "the short term." *Harbury III*, 536 U.S. at 413.[10]

B. *Whether the Plaintiffs Can Prove Denial of Access*.

We turn now to whether the plaintiffs can show they have been, and are currently being, denied meaningful access to the courts.

1. *Backward-looking claims*.

As mentioned, to state a backward-looking denial-of-access claim, plaintiffs must show, among other things, that they have been "completely foreclosed" from meaningfully pursuing their underlying claims. Plaintiffs' complaint looks backward to just

---

[9] Although *Harbury I* and *II* discussed this requirement in the context of a backward-looking claim, nothing in these cases or *Harbury III*, suggests that a forward-looking claim can proceed if a plaintiff can still meaningfully pursue the underlying claim.

[10] Our discussion of the elements of forward-looking and backward-looking claims is not intended to be exhaustive. We have discussed only those elements necessary to resolve this dispute.

one group of underlying claims: the claims of six of the nine plaintiffs that were rejected by the VA. Because these underlying claims have not been "completely foreclosed," however, plaintiffs have failed to state a claim for denial of access.[11]

Plaintiffs cannot show, consistent with the allegations of the their complaint, that no avenue exists through which they can meaningfully pursue their underlying benefits claims. Consequently, they cannot show that the relief they seek is not available in a "suit that may yet be brought," *Harbury III*, 536 U.S. at 415, or in a "presently existing claim," *id*. at 416. The six plaintiffs bringing backward-looking claims cannot make this showing because the Freedom of Information Act ("FOIA"), and VA regulations that allow for the reopening of prior benefits proceedings, appear to provide them, in tandem, precisely what they claim they have been denied. If the defendants are covering up records of medical tests that describe the amount of radiation to which these veterans were exposed, FOIA provides a potential remedy. FOIA provides that, subject to certain exceptions,[12] "each agency, upon any request for records which

---

[11] Because we conclude that plaintiffs cannot show other elements of a denial-of-access claim, we do not address whether the complaint describes the underlying claims of these six plaintiffs "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Harbury III*, 536 U.S. at 416.

[12] Plaintiffs have not shown that the exceptions to FOIA described in 5 U.S.C. § 552(b) would allow these agencies to withhold these documents. In any event, we have reviewed those exceptions and have not found any exception that would so clearly apply as to relieve plaintiffs of the obligation of exhausting their FOIA remedies. *See* 5 U.S.C. § 552(b)(6) (providing an exception for medical records but only where "the disclosure of [the records] would constitute a

(i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). If the agency does not make these records available, a party can repair to the district court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*. § 552(a)(4)(B).

Once plaintiffs obtain the records, VA regulations allow them to "reopen a finally adjudicated claim by submitting new and material evidence." 38 C.F.R. § 3.156(a). Under the regulations, "new evidence" is "existing evidence not previously submitted to agency decisionmakers" and "material evidence" is "existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim." *Id*. If these covered-up documents are what plaintiffs say they are, this provision would undoubtedly allow plaintiffs to reopen their earlier claims. Once the claims are reopened, if the new and material evidence supports a finding that the plaintiffs' illnesses are service-connected, benefits will be awarded retroactive to the date of original filing. 38 C.F.R. § 3.156(c). Plaintiffs therefore will be in the same position they would have been in had there been no cover-up at all. *See Harbury III*, 536 U.S. at 415 ("There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.").

None of the plaintiffs in this case have suggested that this avenue for relief is foreclosed. Plaintiffs did file a FOIA request

clearly unwarranted invasion of personal privacy").

with the VA, DoD, and other Government agencies, but they have not challenged in any court these agencies' failure or refusal to provide the requested documents. Given plaintiffs' failure to exhaust FOIA remedies and seek a reopening of their benefits' claims, plaintiffs cannot show that their underlying claims have been "completely foreclosed." *Harbury I*, 233 F.3d at 609. That failure is fatal to their backward-looking claims.

As a fallback, at oral argument plaintiffs' counsel suggested that the complaint also looks backward to a second category of underlying claims: claims for veterans benefits that the plaintiffs did not file because the defendants' cover-up kept them from knowing that they had been subjected to dangerous levels of radiation while in military service. We have reviewed the complaint, however, and its four counts do not come close to identifying such a category of underlying claims. *See Harbury III*, 536 U.S. at 416 (requiring that the "predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope"). The first count, entitled "Denial Of Access to Courts–Systemic Official Action to Frustrate Plaintiffs' Preparing, Filing, and Prosecuting *Current Claims* for Veterans Benefits," looks forward to claims not yet closed. J.A. 50 (emphasis added). The second, entitled "Denial Of Access to Courts–Systemic Official Action to Cause the Loss or Inadequate Settlement of *Past Claims* for Veterans Benefits," looks backward to claims already filed and closed. J.A. 53 (emphasis added). The last two—"Conspiracy to Deny Plaintiffs' Constitutional Rights" and "Failure to Act to Prevent Denial of Plaintiffs' Constitutional Rights"—are dependant on the first two.

The only statement in the complaint which even arguably looks backward to underlying claims that the plaintiffs did not file is the following confusing statement: "Plaintiffs have

suffered a permanent loss of financial compensation and opportunities for medical benefits . . . because VA regulations prohibit awarding Plaintiffs financial and medical benefits lost because of the denials of past benefit claims and permanently lost opportunities to file benefits claims even if those claims are filed or reopened in the future." J.A. 54. But this statement tells us nothing about which, if any, of the named plaintiffs "permanently lost" specific claims in this way, nor does it tell us anything about the nature of these supposedly "permanently lost" claims—certainly not enough to give the defendants, let alone the Court, "fair notice" of these claims or to allow us to decide if these claims are "nonfrivolous." *See Harbury III*, 536 U.S. at 416.

### 2. *Forward-looking claims.*

As noted, plaintiffs also appear to bring forward-looking denial-of-access claims, seeking release of the covered-up documents so that they can meaningfully "pursue a separate claim for relief once the frustrating condition has been removed." *Harbury III*, 536 U.S. at 413. But these claims fail for the same reason as the backward-looking claims. Because plaintiffs can still seek, through FOIA, the documents they believe they need to meaningfully pursue their benefits claims, they cannot show that their opportunity to meaningfully litigate has been "completely foreclosed," *Harbury I*, 233 F.3d at 609, or that the defendants' actions "presently den[ied] [the plaintiffs] an opportunity to litigate," *Harbury III*, 536 U.S. at 413. That failing is fatal to their forward-looking claims.

### IV.

Plaintiffs have failed to state a claim for denial of access to the courts. They cannot show, under any set of facts consistent with the allegations of their complaint, that the defendants

completely foreclosed their opportunity to meaningfully pursue underlying benefits claims before the VA. The decision of the District Court is therefore affirmed.

*So ordered.*