# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 28, 2022        Decided July 21, 2023

No. 21-5250

CHAVA RACHEL MARK, INDIVIDUALLY AND AS PARENT AND
NATURAL GUARDIAN OF TBM, RLM AND EBM, MINORS, ET
AL.,
APPELLANTS

v.

REPUBLIC OF THE SUDAN AND UNITED STATES,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-03022)

*Asher Perlin* argued the cause and filed the briefs for appellants.

*Christopher M. Curran* argued the cause for appellee Republic of Sudan. With him on the briefs were *Nicole Erb*, *Claire A. DeLelle*, and *Celia A. McLaughlin*.

*Sonia M. Carson*, Attorney, U.S. Department of Justice, argued the cause for appellee United States. With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant

Attorney General, and *Sharon Swingle* and *Lewis Yelin*, Attorneys.

Before: SRINIVASAN, *Chief Judge*, and WILKINS and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: Chava Mark and her family sued Sudan, seeking compensation for a terrorist attack on their family. The question on appeal is whether we have jurisdiction. Under the Foreign Sovereign Immunities Act, a state sponsor of terrorism may be sued for personal injury arising from acts of terrorism. But in 2020, Congress enacted the Sudan Claims Resolution Act, which stripped the federal courts of jurisdiction to hear most terrorism related claims against Sudan. The Marks argue that the Act's jurisdiction-stripping provision is unconstitutional and therefore that their claims against Sudan may be heard in federal court. The district court dismissed for lack of jurisdiction. Finding no constitutional infirmity in the Act's jurisdiction-stripping provision, we affirm.

I.

Michael Mark was driving his wife, Chava Mark, and their children down a country highway in Israel, when two Hamas operatives began tailing them.[1] Swerving into the adjacent lane, the operatives fired roughly 25 bullets from a Kalashnikov assault rifle, killing Michael Mark and injuring his family.

---

[1] We accept these allegations as true for purposes of reviewing the district court's dismissal. *See Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 861 (D.C. Cir. 2022).

Chava Mark and her children sued in federal district court, contending Sudan provided Hamas with material support for the terrorist act. The Marks brought a single claim under the terrorism exception of the Foreign Sovereign Immunities Act ("FSIA"), which creates a private right of action against foreign states that provide "material support or resources" for "personal injury or death" caused by an "extrajudicial killing." National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3, 338–40 (codified as amended at 28 U.S.C. § 1605A(a)–(c)). The Marks sought $250 million in compensatory damages.[2]

After the Marks filed their complaint, the United States entered into a claims settlement agreement with Sudan. *See* Claims Settlement Agreement, U.S.-Sudan ("CSA" or "Agreement"), Oct. 30, 2020, T.I.A.S. No. 21-209 (entered into force Feb. 9, 2021). The Agreement was part of an ongoing effort to improve diplomatic relations between the United States and Sudan and to promote the latter's ongoing democratic transition. *Id.* pmbl. At the time the United States and Sudan entered into the Agreement, Sudan had compensated several victims of the 2000 terrorist attack on the *U.S.S. Cole* but multiple suits against Sudan remained pending. *Id*. The United States agreed to espouse and terminate all remaining claims against Sudan in exchange for a $335 million settlement payment. *Id*. art. III(2); *see also* RESTATEMENT (SECOND) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 213 (1965) (explaining the espousal power allows the President to "waive or settle a claim against a foreign state … without the consent of [the injured] national"); *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1523 (D.C. Cir. 1984) ("Under well-established

---

[2] Sudan was a designated state sponsor of terrorism during all times relevant to this appeal but was removed from the list in 2020.

principles of international law, a sovereign possesses the absolute power to assert the private claims of its nationals against another sovereign.").

After receiving the $335 million, the United States enacted the Sudan Claims Resolution Act ("SCRA"), which effectively restored Sudan's sovereign immunity with respect to terrorism claims. Pub. L. No. 116-260, 134 Stat. 3291 (2020) (codified at 28 U.S.C. § 1605A (note)) (providing the FSIA's terrorism exception no longer applies to Sudan). The Act preserved only one class of suits—the ongoing proceedings brought by "victims and family members of the September 11, 2001, terrorist attacks." SCRA § 1706(a)(2)(A).

Following the Act's passage, Sudan invoked its immunity from suit and moved to dismiss the Marks' case for lack of subject matter jurisdiction. Sudan also maintained the Agreement terminated the Marks' cause of action. The Marks responded that the Act and the Agreement violated the equal protection component of the Fifth Amendment. The United States intervened in support of Sudan.

The district court granted Sudan's motion to dismiss. *Mark v. Republic of Sudan*, 2021 WL 4709718, at *5 (D.D.C. Oct. 7, 2021). The court held that the Act and Agreement were constitutional and therefore that the court lacked jurisdiction to consider the Marks' claims. *Id*. at *3–5. The Marks timely appealed.

II.

The Marks acknowledge their claims fit within the jurisdiction-stripping provision of the Sudan Claims Resolution Act. They maintain, however, that this provision violates the Constitution.

5

A.

Although the Act by its plain terms divests this court of jurisdiction, we nonetheless may consider whether this jurisdictional ouster is "[w]ithin constitutional bounds." *Bowles v. Russell*, 551 U.S. 205, 212 (2007); *Patchak v. Zinke*, 138 S. Ct. 897, 909 (2018) (plurality) (considering a constitutional challenge to a jurisdiction-stripping statute); *Belbacha v. Bush*, 520 F.3d 452, 456 (D.C. Cir. 2008) (recognizing that federal courts have "presumptive jurisdiction … to inquire into the constitutionality of a jurisdiction-stripping statute").

The Constitution vests Congress with the authority "[t]o constitute Tribunals inferior to the supreme Court." U.S. CONST. art. I, § 8, cl. 9; *see also id.* art. III, § 1. This broad power "includes [the] lesser power to limit the jurisdiction of those courts." *Patchak*, 138 S. Ct. at 906 (plurality) (cleaned up). "[T]he subject-matter jurisdiction of the lower federal courts is determined by Congress in the exact degrees and character which to Congress may seem proper for the public good." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989) (cleaned up). Congress' "'control over the jurisdiction of the federal courts' is 'plenary,'" provided it "does not violate other constitutional provisions" when exercising its power to constitute inferior tribunals. *Patchak*, 138 S. Ct. at 906 (plurality) (quoting *Trainmen v. Toledo, P. & W.R. Co.*, 321 U.S. 50, 63–64 (1944)); *see also Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850) ("[A] statute which does prescribe the limits of [the courts'] jurisdiction, cannot be in conflict with the Constitution, unless it confers powers not enumerated therein."). Congress' power to set lower federal court jurisdiction serves as an important constitutional check on the judiciary.

With respect to foreign sovereign immunity, Congress has exercised its power to specify whether and to what extent foreign sovereigns may be sued in federal court. *Human v. Czech Republic—Ministry of Health*, 824 F.3d 131, 134 (D.C. Cir. 2016). In civil suits, the FSIA mandates that "a foreign state shall be immune from the jurisdiction of the courts of the United States," unless certain exceptions apply. 28 U.S.C. § 1604; *see also id.* §§ 1605, 1605A, 1605B, 1607 (enumerating exceptions); *Argentine Republic*, 488 U.S. at 439 (explaining the FSIA is the exclusive avenue for "obtaining jurisdiction over a foreign state in federal court"). The FSIA's terrorism exception provides federal courts with jurisdiction over certain injuries caused by state sponsors of terrorism. 28 U.S.C. § 1605A(a)–(c).

The Sudan Claims Resolution Act effectively restored Sudan's sovereign immunity for most terrorism related claims. Under the Act, Sudan "shall not be subject to [various] exceptions to immunity from jurisdiction," including the FSIA's terrorism exception. SCRA § 1704(a)(1)(A). The Act preserved only one class of suits—the ongoing proceedings brought by "victims and family members of the September 11, 2001, terrorist attacks." *Id.* § 1706(a)(2)(A); *see also id.* § 1706(c) ("Nothing in this Act shall apply to … any claim in any of the proceedings comprising the multidistrict proceeding [related to the September 11 attacks] brought by any person who, as of the date of the enactment of this Act, has a claim pending against Sudan.").

## B.

The Marks concede their claims do not fit within the carve-out for the victims of the September 11 attacks and are encompassed by the Act's provision stripping jurisdiction for terrorism claims against Sudan. Nonetheless, the Marks

maintain this provision is unconstitutional because it violates the equal protection guarantee of the Fifth Amendment. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 204 (1995) (discussing the "equal protection component of the Fifth Amendment's Due Process Clause"). They argue the disparate treatment of their claims from those of the September 11 victims is (1) an arbitrary distinction that fails rational basis review, and/or (2) an impairment of their fundamental right to access the courts that cannot survive strict scrutiny.[3] Because the jurisdiction-stripping provision of the Act is unconstitutional, the Marks contend, this court retains jurisdiction over their suit against Sudan for its support of the lethal terrorist attack on their family.

---

[3] The Marks challenge both the Agreement and the Act as unconstitutional. The Agreement, however, espouses their claims and therefore "simply effected a change in the substantive law governing the lawsuit," but did not affect our jurisdiction. *Dames & Moore v. Regan*, 453 U.S. 654, 685 (1981). The Marks' equal protection arguments do not distinguish between the disparate treatment with respect to jurisdiction-stripping and the disparate treatment with respect to the substantive claims espoused by the United States. Because we hold that we lack jurisdiction over the Marks' claims, we do not consider the Marks' constitutional arguments as they pertain to the substance of the Agreement.

We also note the district court improperly analyzed the constitutionality of the Agreement. Although the Marks raised the same constitutional arguments against the Act and the Agreement, the jurisdictional question should have been addressed first. Finding no jurisdiction, the proper course was to dismiss the suit without considering the Marks' claims about the Agreement. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

1.

The Marks first argue the Act's jurisdiction-stripping provision runs afoul of equal protection because it bars their claim while allowing the claims of "other similarly situated victims of Sudan-sponsored terrorism." In particular, they maintain the Act arbitrarily carves out claims brought by certain September 11 claimants.

We apply rational basis review unless a statutory classification "proceeds along suspect lines [or] infringes fundamental constitutional rights." *Hettinga v. United States*, 677 F.3d 471, 478 (D.C. Cir. 2012) (per curiam) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). The parties agree that the Marks' first equal protection challenge is subject to rational basis review. Judged under this standard, we must uphold the Act's statutory classifications "if there is any reasonably conceivable state of facts that could provide a rational basis for" them. *Beach Commc'ns, Inc.*, 508 U.S. at 313. So long as it does not classify along suspect lines or impair fundamental rights, Congress may provide "special treatment" to one group if there is a rational basis for doing so. *Am. Bus Ass'n v. Rogoff*, 649 F.3d 734, 741–42 (D.C. Cir. 2011); *see also Beach Commc'ns, Inc.*, 508 U.S. at 314 (explaining that under rational basis review a statute "bear[s] a strong presumption of validity").

The Act's jurisdiction-stripping provision easily satisfies this standard. Both Sudan and the United States offer several reasonable justifications for the Act. First, the Act's jurisdiction-stripping provision fosters stronger relations with Sudan by limiting its potential liability to United States nationals. The government exercised its power to espouse claims against Sudan, eliminating "sources of friction between the two sovereigns." *Dames & Moore v. Regan*, 453 U.S. 654,

679 (1981) (cleaned up). Consistent with the espousal of claims in the Settlement Agreement, the Act stripped jurisdiction over certain pending claims, freeing Sudan from potential liability that could otherwise impair its relationship with the United States.

Second, the Act's jurisdiction-stripping provision rationally distinguishes between terrorist attacks in general and the September 11 attacks. The Act's carveout for September 11 victims and families involves one of the most fatal attacks on the United States homeland. And the litigation surrounding September 11 has been ongoing for nearly twenty years. The Marks' claims, on the other hand, stemmed from a terrorist attack abroad, and their suit arose just a few months before the United States and Sudan entered into the Agreement. It was rational for the Act to maintain decades-old claims over more recent ones and to prioritize attacks on the homeland over other attacks.

2.

The Marks also contend the Act's jurisdiction-stripping provision violates equal protection by impairing their right to access the courts. Because the right to access the courts is a fundamental right, the Marks maintain the unequal treatment must survive strict scrutiny.

The Supreme Court has long held that citizens have a constitutional right to access the courts. *See, e.g.*, *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907). Circuit courts have recognized two types of access claims: forward looking claims and backward looking claims. *Christopher v. Harbury*, 536 U.S. 403, 412–14 (2002) (discussing cases); *see also Broudy v. Mather*, 460 F.3d 106, 117–21 (D.C. Cir. 2006) (recognizing both types). Forward looking claims generally arise when the government hinders a litigant's ability to file or

prepare for a lawsuit that has not yet commenced. For a forward looking claim to succeed, the Marks must show that "systemic official action frustrate[d] [the Marks] in preparing and filing" their suit. *Christopher*, 536 U.S. at 413. The Marks make no such showing. Backward looking claims arise when the government "cause[s] the loss or inadequate settlement of a meritorious case" or "the loss of an opportunity to sue." *Id*. at 413–14. To bring a successful backward looking claim, the Marks must assert that the government "caused the[ir] suit to be dismissed as untimely" or that some sort of official conduct "render[ed] hollow [their] right to seek redress." *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012) (cleaned up). But the Marks assert neither. The Marks challenge Congress' restoration of Sudan's sovereign immunity, but these claims simply do not implicate the right to access the courts. *See Patchak v. Jewell*, 828 F.3d 995, 1004 (D.C. Cir. 2016), *aff'd sub nom. Patchak*, 138 S. Ct. at 897.

Moreover, the Marks' claims are in tension with the government's power to establish inferior courts and espouse the claims of its citizens. Since the Founding, the President has exercised the power to espouse the claims of citizens. *See, e.g.*, *Ware v. Hylton*, 3 U.S. (3 Dall.) 199, 259–60 (1796) (statement of Iredell, J.); *Dames & Moore*, 453 U.S. at 679 n.8. Similarly, Congress has long exercised its plenary authority to set the jurisdictional reach of the federal courts. The right to access courts does not constrain either of these longstanding powers.

## C.

Finally, although we hold the Act validly stripped the federal courts of jurisdiction over the Marks' cause of action, the district court erred when it dismissed the Marks' complaint with prejudice. "[A] dismissal for want of subject-matter jurisdiction can only be without prejudice." *N. Am. Butterfly*

*Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020); *see also* FED. R. CIV. P. 41(b). Accordingly, we modify the district court's judgment to be a dismissal without prejudice.

\* \* \*

The Marks family suffered a horrible attack by Hamas for which it seeks recovery from Sudan. Congress has, however, stripped this court of jurisdiction to hear the Marks' terrorism related claims. That provision is constitutional, and we lack jurisdiction. We affirm the district court's judgment as modified.

*So ordered.*