**Cynthia ARTIS, et al., Appellants,**

v.

**Alan GREENSPAN, Chairman, The Board of Governors of the Federal Reserve System,Appellee.**

**No. 97–5235.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 23, 1998.

Decided Oct. 20, 1998.

court. Because we find the decision helpful to the court and not prejudicial to the parties, we deny the motion.

Richard T. Sampson argued the cause for appellants. With him on the briefs was Walter Theodore Charlton.

Richard M. Ashton, Associate General Counsel, Board of Governors of the Federal Reserve System, argued the cause for appellee. With him on the brief were James V. Mattingly, Jr., General Counsel, and Gerald S. Hartman.

Before: WALD and TATEL, Circuit Judges and BUCKLEY, Senior Circuit Judge.

WALD, Circuit Judge:

The four named plaintiffs in this case, all African–American secretaries working for the Legal Division of the Federal Reserve Board ("Board"), first brought their individual claims of race discrimination to their employer's attention in early 1995. As they forded the administrative process, they insisted at various points that their complaints covered discriminatory practices permeating all of the Board's divisions, and in August 1995, they amended their administrative complaint to allege a status as class agents on behalf of all the Board's African–American secretaries. Almost a year later, the Board dismissed their class complaint on the ground that the four agents had failed to present class-wide claims during the Board's mandatory Equal Employment Opportunity ("EEO") counseling process. The would-be class agents then filed this class complaint in federal district court. The Board moved to dismiss the complaint under FED.R.CIV.P. 12(b)(1) on the ground that the plaintiffs had failed to exhaust their administrative remedies. The district court granted the motion, and the plaintiffs appealed.[1]

1. The plaintiffs state that they are also appealing "the denial as moot of two motions to intervene brought by thirteen additional current or former secretarial employees of the Board" as well as "their related motions for an evidentiary hearing on the issue of failure to exhaust administrative remedies, to the right to jury trial on disputed factual issue [sic], and for leave to issue subpoenas for depositions of witnesses on key factual issues." Appellants' Brief at 2. We discuss below the reason why the plaintiffs' request for a remand to resolve the factual issues surrounding the motion to dismiss is rejected. The other issues were not briefed on appeal and so are

The plaintiffs' primary argument is that they did exhaust their administrative remedies because they placed the Board "on notice" during the counseling period that they intended to pursue class claims. And, they continue, even if they were not successful in presenting the substance of their class-wide issues to the EEO Counselor, it was only because the Board itself prevented them from doing so. We conclude that plaintiffs did not raise their class complaints with the EEO Counselor and that the fault for this did not lie with the Board. We therefore affirm the district court's dismissal of the class complaint.

### I.

Plaintiffs' arguments against dismissal on exhaustion grounds are quite fact-specific, so it is necessary to set out the relevant facts at some length.

### A.  *The Beginning*

In January 1995, Cynthia Artis, Sharon Logan and Sharon Ellis, three of the four putative class agents in this case, filed a complaint with their EEO Counselor, charging race discrimination in the way the Legal Division meted out cash awards, performance ratings, and merit pay increases. By the end of the counseling period, Kimberly Hardy, the fourth plaintiff here, had joined in the charges of the other three. Counseling is required by Board regulations: "Aggrieved persons who believe they have been discriminated against on the basis of race ... must consult an EEO Counselor prior to filing a complaint in order to try to informally resolve the matter." 12 C.F.R. § 268.204(a) (1995). After counseling, "The Board shall dismiss a complaint or portion of a complaint: ... (2) ... that raises a matter that has not been brought to the attention of an EEO Counselor and is not like or related to a matter that has been brought to the attention of an EEO Counselor." *Id.* § 268.206(a).

### B.  *The First Complaint*

On March 17, 1995, after counseling was completed, the four women filed a "class action discrimination complaint based on race" with the Board against the "Legal Division of the Federal Reserve." A month later, Artis wrote a letter to an EEO officer at the Board requesting data on all secretaries working throughout the Board including the distribution of cash awards, starting salaries, and performance ratings. The information was sought "[i]n order to determine if the class action complaint we have filed with the EEOC adequately meets the requirements of a class...." Sheila Clark, the EEO Programs Director at the Board, responded that the Board's regulations did not authorize the disclosure of such data unless or until the Administrative Law Judge ("ALJ") assigned to hear the complaint requested it.

On July 24, 1995, the ALJ formally requested additional information from the four secretaries before recommending acceptance or rejection of the class element of the complaint. In essence, the ALJ asked the complainants to submit any material specifically relevant to the four requirements for class certification—typicality, commonality, numerosity, and adequacy of representation. *See* 29 C.F.R. § 1614.204(a)(2) (1995). The ALJ did not request any information from the Board.

### C.  *The First Amended Complaint*

The four secretaries responded on August 7 by obtaining counsel and filing a "First Amended Complaint" with the Board. In this complaint, the secretaries purported to represent "all African–American secretarial employees at the Board of Governors of the Federal Reserve System grade 33 to 36 and exempt secretaries, from grade 21 to 25, for which equivalent G/S levels are currently unknown." Although the document did make generalized accusations of discrimination against the entire Board, the only detailed charges concerned the secretaries at the Legal Division, who were the only named class agents. In a separate letter, the complain-

waived. *See, e.g., Terry v. Reno,* 101 F.3d 1412, 1415 (D.C.Cir.1996), *cert. denied,* —— U.S. ——,

117 S.Ct. 2431, 138 L.Ed.2d 193 (1997).

ants' counsel provided the ALJ with names of eight potential class members in other divisions. Counsel did not set forth which alleged discriminatory practices or policies affected these other secretaries and declined to provide more information, citing the Board's earlier refusal to provide statistics on secretaries working throughout the Board. The Board responded with a request that the claims be dismissed, charging that the new complaint impermissibly expanded the class to include members whose claims of discrimination had not been discussed at the counseling stage, as well as new allegations of discriminatory behavior in failure to train, failure to promote, maintenance of segregated facilities, and reprisal that had not been raised in counseling.

## D. *Counseling*

On September 25, 1995, the ALJ determined that, in light of the new complaint, the case should be remanded for further EEO counseling. *See* 29 C.F.R. § 1614.204(d)(3) (1995). The ALJ directed Clark, the Board's EEO Programs Director, to conduct counseling "with regard to the expanded class and issues not previously counseled" and to complete the counseling within the parameters of § 1614.105 (providing for 30 days of counseling unless parties agree to extend the period). Communication, however, broke down between the complainants and their EEO Counselor, Millie Wiggins, and on October 12 the four secretaries sent a letter to the ALJ asking for written clarification of the issues that should be the subject of post-remand counseling. This confusion appears to have stemmed from the new allegations of retaliation about which Artis informed the EEO Counselor during an October 2 counseling session. Two former secretaries from other divisions of the Board, who were named in

counsel's August 7 letter but not in the First Amended Complaint, were claiming that they had been retaliated against for taking time off work to which they were entitled, and the counselor was unsure whether these two women should be allowed to take part in counseling at the request of the named class agents. Before the ALJ responded to the complainants' letter, Wiggins apparently decided to contact the two secretaries, Crystal Clay Wilson and Linda Proctor. On October 25, Wiggins sent letters notifying them to contact her for counseling by November 2, 1995—the last day of the counseling period. Both submitted, through Artis, "Statement[s] of Reprisal" setting forth their allegations

On November 14, Wiggins submitted a final counseling report to Clark. The report includes notes that during an October 6 meeting, the four complainants requested "five data sets that they feel will enable them to name other members of the class action suit." According to the report, the four would-be class agents "stated that they could not name other members of the class until they obtain certain information. Names previously given to [Wiggins] were retracted except for Ms. Wilson and Ms. Proctor."

## E. *Further Counseling on Class Issues*

Before Wiggins sent the November 14 report to the ALJ, the ALJ responded on November 8 to the complainants' request for clarification of the scope of counseling: "At a minimum, EEO counseling should address: the expanded class; training; assignment of positions; segregated facilities; distribution of work; promotion; and reprisal." Subsequently, Wiggins tried to contact the eight members of the expanded class and issued a second counseling report on December 4.[2]

---

**2.** The ALJ's letter came after the initial counseling period had ended, and there is some confusion in the record as to whether or how the counseling period was extended. Title VII regulations provide that the 30-day counseling period may be extended only if the complainants agree with the agency in writing to postpone the date of the final interview. 29 C.F.R. § 1614.105(d)-(e). But according to Wiggins' December 4 report, the EEO office had instructed her that counseling was to conclude on December 1, sug-

gesting that the counseling period was extended past the original November 2 cut-off.

In the December 4 report, Wiggins noted that Artis had contacted her twice at the end of November to protest the continued counseling: "Ms. Artis stated the time for counseling has expired and there is no requirement in any orders from the Judge ordering counselors to do this counseling. She stated that those were the exact words of her attorney. Ms. Artis informed me that she would let the ladies know what their

This December 4 counseling report is particularly important because it is the only document outlining the Board's repeated efforts to contact secretaries who worked or had worked for the Board outside of the Legal Division. According to the report, three women on the outside (including Wilson, who apparently did not forward a working telephone number to the EEO Counselor when Artis submitted her statement) were unreachable because of incorrect or unavailable telephone numbers; one woman did not respond to offers of an interview; two women declined to take part in counseling because they had been told by Artis' lawyer that the time for counseling had expired; one woman, Proctor, said she thought her issues were distinct from those of the class;[3] and one woman declined to participate. Both counseling reports and the case file were forwarded to the ALJ on January 5, 1996.

On January 17, 1996, complainants' lawyer sent the ALJ three documents "for filing" in the case. One document was a "Second Amended Complaint," which again provided names of potential class agents outside of the Legal Division. The Second Amended Complaint is identical to the First Amended Complaint, except that it contains a new paragraph 71 naming seven additional class agents.[4] These additional seven women were the same women whom the Board had contacted or tried to contact while counseling was ongoing. The agents' counsel suggested a formal hearing or "a short period of discovery"—a process not provided for in EEOC or Board regulations—to determine the precise status and scope of the complaint.

## F. The Final Ruling

On June 3, 1996, the ALJ recommended dismissal of the agents' class claims. He found that complainants had failed to present evidence sufficient to show the commonality and typicality of discrimination claims required for a class complaint encompassing all African–American secretaries at the Board. "In response to my request for information concerning whether there is a centralized administration and/or decision-making system, the class representative stated that although class members belong to more than one Agency division, the Agency has a centralized personnel system (and therefore centralized decision-making)." The ALJ found this proffer to be inadequate: "[C]ommonality requires that there be questions of fact common to the class. Conclusory allegations of discrimination in different [personnel] practices are not certified merely because the purported class members share the same race, national origin, or sex." On June 28, the Board adopted the ALJ's recommendation with the additional finding that "dismissal of the amended complaints is also warranted because events allegedly occurring outside of the Legal Division have not been the subject of counseling as required under the EEO rules."

## II.

■■■ The district court decided appellant's FED.R.CIV.P. 12(b)(1) motion to dismiss based on the pleadings as well as materials from the administrative record submitted by both sides. The material facts themselves

attorney said and they will make up their minds whether they will have counseling or not." Thus the putative class agents resisted any further counseling following the ALJ's clarification letter. Moreover, as the ALJ noted in his opinion, the four complainants had withdrawn the names of the other eight secretaries during the original 30-day period.

3. Proctor told the counselor that she is Native American, not African–American. In addition, her statement of reprisal seems to indicate that, unlike the other complainants, her alleged reprisal resulted not from protected activity but from her attempt to take time off to care for two sick children. Although she said in her statement that she was placed on "career transition" after

the Board discovered she was involved in this class complaint, in August 1995, Proctor also said that she *wanted* to be placed on career transition.

4. The paragraph states, in pertinent part: "Seven additional persons have requested that they be added to the case as named complainants. Those persons have retained undersigned counsel and authorized counsel to represent each of them in the complaint. Each of the following named complainants adopt [sic] the factual representations (in general) and represent that similar discriminatory acts have been applied to each and every one of them following exactly the pattern described by the original four named complainants."

upon which the district court's decision rests were undisputed,[5] and plaintiffs nowhere set forth which, if any, material facts they are disputing here. Instead, plaintiffs appear to contest the inferences the Board and the district court have drawn from the uncontested record of agency proceedings. The non-moving party is entitled to all *reasonable* inferences that can be drawn in her favor. *Cf. Shields v. Eli Lilly & Co.,* 895 F.2d 1463, 1465 (D.C.Cir.1990). We conclude that plaintiffs have not proffered any reasonable inferences that differ from the Board's and are material to this dispute. Thus, we apply the *de novo* standard of review to the district court's application of law to undisputed fact. *See, e.g., Herbert v. National Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992).

The purpose of EEO counseling is *"to try to informally resolve the matter."* 12 C.F.R. § 268.204(a) (1995) (emphasis added). Claims must be brought to the EEO Counselor in a manner that lends itself to potential resolution. Thus we have held that providing the agency with bare "notice" of the basis of a complaint during the counseling stage is not enough. Agencies cannot make informed decisions based on "vague allegations of discrimination ... [without] details or dates" because this "frustrat[es] the agencies' ability to investigate complaints" and impedes their efforts to issue final rulings on the merits. *Wilson v. Peña,* 79 F.3d 154, 164–65 (D.C.Cir.1996) ("If a complainant forces an agency to dismiss or cancel the complaint by failing to provide sufficient information to enable the agency to investigate the claim, he may not file a judicial suit."); *see also Barnes v. Levitt,* 118 F.3d 404 (5th Cir.1997) (plaintiff did not comply with exhaustion requirement when she told EEO Counselor that she refused to participate in counseling because the agency had known of her specific allegations for two years), *cert. denied,* —— U.S. ——, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998); *Pack v. Marsh,* 986 F.2d 1155 (7th Cir.1993) (per curiam) (when agency is not given the opportunity to reach merits of an EEOC claim, federal courts will not reach the merits either); *Woodard v. Lehman,* 717 F.2d 909 (4th Cir.1983) (agency properly found that complaint must be canceled or dismissed when complainant in counseling declines to describe the specific event that gave rise to the complaint); *Johnson v. Bergland,* 614 F.2d 415 (5th Cir.1980) (per curiam) (plaintiff's general claims of discriminatory grading and seniority policies insufficient for exhaustion purposes); *cf. Brown v. Marsh,* 777 F.2d 8, 15 (D.C.Cir.1985) (in case with long and tortured history of administrative litigation "it was [not] beyond the intellectual resources of the Army to surmise that when plaintiff applied to no avail for two specific positions he might consider those two rejections to be further evidence of the continuing pattern of discriminatory nonpromotion of which he had already complained"); *Shehadeh v. Chesapeake & Potomac Telephone Co.,* 595 F.2d 711 (D.C.Cir.1978) (exhaustion requirement met even though plaintiff omitted the name of respondent in formal complaint because complaint still provided notice to the wrongdoer and could facilitate conciliation).

■ The record of plaintiffs' contacts with the Board indicates that: (1) they initially provided names of eight secretaries who worked throughout the Board but did not identify the discriminatory Board-wide practices of which each complained; (2) they demanded statistical data from the Board before providing information about such practices and withdrew the names of six of the secretaries when plaintiffs were told that they were not entitled to such information during the counseling stage; and (3) they told the other secretaries (at least, those whom the counselor could reach) not to talk to the EEO Counselor when she later attempted to counsel them in accordance with the ALJ's clarification letter. This case does not provide us with an exemplary model of an orderly counseling process; however, the only reasonable inference we can draw from the record is that plaintiffs failed to give the Board information to which plaintiffs alone

---

5. Appellants claim that they were prejudiced by the district court's consideration of material outside the pleadings, but at oral argument on appeal, appellants' lawyer conceded that no Rule 56(f) motion had been filed in the district court and that appellants had submitted 37 exhibits of their own in opposition to the Board's motion. Accordingly, this argument fails.

had access—specific instances of Board-wide discriminatory personnel practices that affected the members of the putative class. Wilson and Proctor did submit "Statement[s] of Reprisal," but even if their allegations of retaliation for taking days off could be construed to present claims in common with the other class members, Proctor herself told the counselor that her issues were different. In addition, neither Wilson, who according to the counselor's November report no longer worked at the Board, nor the other complainants provided the Board with a working telephone number for Proctor so that the counselor could work with her and her supervisors to solve the problem in a nonadversarial manner. Indeed, exhaustion of the counseling step is necessary because "Congress wanted to give each agency 'the opportunity as well as the responsibility to right any wrong that it might have done.'" *Brown,* 777 F.2d at 14 (citation omitted). As evidenced in the counseling report submitted by Wiggins on March 27, 1995, pursuant to the four Legal Division secretaries' first complaint, counseling requires extensive interviews with complainants and their supervisors, as well as identification and evaluation of pertinent agency records. Neither Wilson's nor Proctor's statements alone, and certainly not the nonresponses of the secretaries outside of the Legal Division, gave the EEO enough information to counsel the class claims.

In this case, the agency dismissed the class complaint because the complainants failed to raise issues or to name representatives beyond the Legal Division during sessions with the EEO Counselor.[6] *See* 12 C.F.R. § 268.206(a)(2) (1995); 29 C.F.R. § 1614.107(b) (1995). Plaintiffs argue that

since the ALJ was also able to reach "the merits" of their class complaint, the Board is barred from taking the position that they did not provide adequate detail for exhaustion purposes during counseling. *Cf. Wilson,* 79 F.3d at 164. But to the contrary, the Board's denial plainly relied on the plaintiffs' failure to engage in counseling their alleged class complaints. That the Board *also* rejected the complaint for failure to meet the threshold typicality and commonality requirements of a class complaint adds nothing to the mix. A commonsense reading of the decision reveals that the class complaint was rejected because agency officials had *no* information on which to base a finding of typicality or commonality.[7]

Plaintiffs insist that the Board's actions blocked their access to key information that would have enabled them to pursue their class claims in counseling. However, the record before us speaks to the contrary; it demonstrates that *plaintiffs* declined to cooperate with the Board. The four named complainants only addressed Board-wide complaints by way of asking for data on other secretaries, and they apparently declined to help—and in fact, took steps to discourage— Wiggins in contacting the others during the 30–day counseling period until their informational demands were met. Not one of the eight secretaries from other divisions came forward with her claim in a manner that enabled the Board to right its alleged wrongs. Indeed, counsel's letter to the Board accompanying the Second Amended Complaint, as well as counsel's July 1, 1996 letter to the Board, decried the counseling process and asked for quick and final administrative rulings on all issues. In that respect, this scenario is quite different from the

6. Since there were only six secretaries in the Legal Division, the ALJ found that the numerosity requirement for class complaints would not be met if the class were limited to secretaries in that division.

7. During oral argument, plaintiffs' counsel attempted to draw our attention to the Second Amended Complaint, which did include names of secretaries outside the Legal Division. However, this complaint was filed on January 17, 1996, well beyond the close of counseling, and was clearly not intended as a request for more counseling, given that the class representative plainly

resisted any extension of the counseling period in his accompanying letter to the ALJ. Thus, this complaint could hardly be viewed as evidence that plaintiffs sought to exhaust their administrative remedies. In addition, the Second Amended Complaint added the names of seven more women outside the division but provided no details about their charges. *See* 29 C.F.R. § 1614.204(c)(1) ("[a] class complaint must be signed by the agent or representative and must identify the policy or practice adversely affecting the class as well as the specific action or matter affecting the class agent").

cases on which plaintiff chiefly relies, *Mangiapane v. Adams,* 661 F.2d 1388 (D.C.Cir. 1981) (per curiam), and *President v. Vance,* 627 F.2d 353 (D.C.Cir.1980). In both of these cases, unlike this one, the agency had been presented with detailed complaints about *specific* personnel practices. In *President,* this court ruled that a plaintiff need not specifically plead in his administrative complaint that the remedy he seeks is promotion from one grade level to another when it is made clear in other documents in the administrative record. In *Mangiapane,* we extended *President* to hold that where a complainant has pleaded a nonpromotion claim to the agency, it is not her responsibility to identify the positions for which she applied. By contrast, the plaintiffs here did not identify any agency-wide discriminatory personnel practices. The record wholly supports the ALJ's conclusion that "[t]he class representative provided no probative information of an Agency policy that created a pattern of discrimination despite the division-level decision making." If secretaries (perhaps even one secretary) outside of the Legal Division had agreed to pursue counseling, the ALJ might have had a basis on which to find "specific facts that are common to the class." *Artis v. Board of Governors of the Federal Reserve,* EEOC No.100–96–7227X, at 8 (Administrative Law Judge Recommendation, June 3, 1996). As the record stands, however, it is clear that the Board fulfilled its statutory duties in dealing with the plaintiffs. *See* 29 C.F.R. § 1614.204(d)(3).

The judgment of the district court is therefore affirmed.

*So ordered.*