Maria **KOUTNY**, et al., **Plaintiffs,**

v.

Carla J. **MARTIN**, **Defendant.**

**Civil Action No. 06–598 (RWR).**

United States District Court, District of Columbia.

Dec. 31, 2007.

A. Mary Schiavo, Motley Rice, LLC, Mt. Pleasant, SC, for Plaintiffs.

Roscoe Howard, Jr., Stuart F. Pierson, Troutman Sanders LLP, Washington, DC, for Defendant.

### MEMORANDUM OPINION

RICHARD W. ROBERTS, District Judge.

Seven plaintiffs sued defendant Carla Martin under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging that Martin deprived them of their constitutional rights to access to the courts and to a fair trial. After the seven cases were consolidated, Martin moved to dismiss the complaint claiming that plaintiffs lack standing and fail to state a claim upon which relief may be granted. While plaintiffs possess standing to pursue their claims, they have not stated a claim for relief, and Martin's motion to dismiss will be granted.

### BACKGROUND

Plaintiffs claim that Martin, a former employee of the Department of Transportation and the Department of Homeland Security, conspired to destroy, cover up, and tamper with evidence in two separate proceedings. A current consolidated proceeding involving plaintiffs is a wrongful death action, related to the September 11, 2001 attacks, against various airline company defendants pending in federal district court for the Southern District of New York before Judge Alvin Hellerstein. During that proceeding, the Transportation Security Administration ("TSA") intervened to protect unauthorized disclosure of Sensitive Security Information ("SSI"). After allowing plaintiffs' attorneys possessing the necessary security clearance to be granted conditional access to SSI, TSA reneged on this position. In response to Judge Hellerstein's request, TSA issued final orders denying conditional disclosure of SSI and requiring that all discovery requests potentially implicating SSI be filtered through the TSA. Judge Hellerstein determined that he was without jurisdiction to review TSA's final orders. (Def.'s Mot. to Dismiss, Ex. 3 (part 1), Order at 15–16.) Plaintiffs allege that Martin, as part of the TSA, interfered with the wrongful death action by improperly labeling discoverable documents and evidence as SSI and "otherwise causing the unavailability of information which was previously public," preventing plaintiffs from engaging in discovery. (Compl. ¶ 30(f), (i).)

Plaintiffs also assert that Martin coached "witnesses, and otherwise attempted to shade and alter evidence" in the criminal case of *United States v.*

*Moussaoui* filed in the federal district court for the Eastern District of Virginia before Judge Leonie Brinkema. (Compl. ¶ 30(*l* ).) Judge Hellerstein ruled that he could not address that TSA conduct (Compl., Ex. B), but Judge Brinkema determined that Martin's involvement with witnesses violated judicial orders and that her actions were "not capable of being authorized by her position in government." (Compl. ¶ 32.) The judge thereafter excluded certain witnesses from testifying in that criminal trial. (Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n") at 3.) Plaintiffs, as intervenors in the *Moussaoui* action (*see* Def.'s Mot. to Dismiss, Ex. 4, Mot. to Intervene), sought to gain access to portions of the record, namely evidence relating to aviation security (*see* Pls.' Opp'n, Ex. A), to use in their wrongful death action. Their request was denied as moot as to all publicly available evidence and granted as to all evidence to be placed before the jury, and all non-classified and non-SSI information produced by the government to the defense as discovery material. (Def.'s Mot. to Dismiss, Ex. 4, Order of 4/7/06.) On the government's appeal, the United States Court of Appeals for the Fourth Circuit reversed, holding that Judge Brinkema lacked authority to require the government "to provide non-public criminal discovery materials to victims for their use in civil litigation against third parties in a different jurisdiction." *United States v. Moussaoui,* 483 F.3d 220, 233, 239 (4th Cir.2007). Thus, the government has not turned over the requested discovery from *Moussaoui* for use in the wrongful death litigation.

Plaintiffs filed the instant *Bivens* action seeking damages and injunctive relief, claiming that they possess no other ade-quate remedy for Martin's actions. (Compl. ¶ 35.) Martin moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending that plaintiffs lack standing and they have failed to state a predicate constitutional violation as is required by *Bivens.* Plaintiffs [1] have opposed the motion.

## *DISCUSSION*

### I. STANDING

██ "[A] showing of standing is an essential and unchanging predicate to any exercise of [a court's] jurisdiction." *Fla. Audubon Soc'y v. Bentsen,* 94 F.3d 658, 663 (D.C.Cir.1996) (citation and internal quotation omitted). "As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing." *Autozone Dev. Corp. v. Dist. of Columbia,* 484 F.Supp.2d 24, 28 (D.D.C.2007). A defendant may move under Rule 12(b)(1) to dismiss a claim on the ground that the court lacks jurisdiction over that claim. In considering the motion, a court accepts as true all of the factual allegations contained in the complaint, *Artis v. Greenspan,* 158 F.3d 1301, 1306 (D.C.Cir.1998), and may also consider "undisputed facts evidenced in the record." *Coal. for Underground Expansion v. Mineta,* 333 F.3d 193, 198 (D.C.Cir.2003) (citations and internal quotation omitted). "The nonmoving party is entitled to all *reasonable* inferences that can be drawn in her favor." *Artis,* 158 F.3d at 1306.

██ In order to establish standing, the plaintiffs must allege a personal injury in fact, that is traceable to the defendant's conduct, and is redressable by the relief

---

**1.** The district court electronic docket for the Southern District of New York reflects that three of the seven plaintiffs here (Maria Koutny, Stephen Holland, and Eileen Bertorelli- Zangrillo) settled their wrongful death actions after opposing Martin's motion, but that the four remaining plaintiffs still have ongoing litigation there.

requested. *See Int'l Bhd. of Teamsters v. Transp. Sec. Admin.*, 429 F.3d 1130, 1133 (D.C.Cir.2005). "Specifically, standing to bring a constitutional claim requires (1) 'injury in fact' which is (a) 'concrete and particularized' and (b) 'actual and imminent, not 'conjectural' or 'hypothetical[,]' ' ... (2) a 'causal connection between the injury and the conduct complained of[,]' " *Wright v. Foreign Serv. Grievance Bd.*, 503 F.Supp.2d 163, 171 (D.D.C.2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)), and (3) that it is " 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (citation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Id.* at 561, 112 S.Ct. 2130.

■ Martin argues that the plaintiffs lack standing because they have not alleged a personal injury and that the court in the wrongful death action has already granted plaintiffs access to their requested discovery. The plaintiffs counter that Martin's interference and tampering with evidence in both the wrongful death and *Moussaoui* actions constitutes a redressable injury given that "[p]laintiffs are still without the critical evidence they require to vindicate their constitutionally protected right to access the United States justice system." (Pls.' Opp'n at 8.)

At the Rule 12(b)(1) stage, plaintiffs' allegation that Martin's actions deprived them of testimony to which they would have had access sufficiently plead an injury that is traceable to Martin's conduct. They allege that Martin interfered with the civil litigation, improperly classified information as SSI, and tampered with witnesses in the *Moussaoui* trial requiring Judge Brinkema to exclude testimony on aviation security. Martin's asserted actions would have curtailed discoverable information that the plaintiffs would have been able to use in their wrongful death litigation. Furthermore, the issue is not, as Martin asserts, that plaintiffs have alternative avenues of relief available, but that the injury alleged by the plaintiffs is redressable by the relief requested. In plaintiffs' case, the injury would likely be redressed by the requested relief and is not speculative. The relief would provide damages to compensate for alleged actions by Martin which would have weakened the plaintiffs' proof of liability and damages in the wrongful death litigation, and would enjoin Martin from further interfering in that action. Plaintiffs have presented an actual, concrete injury that was allegedly caused by Martin and is redressable. Accordingly, plaintiffs have standing to bring their *Bivens* claim.

## II. CONSTITUTIONAL CLAIM

■ Martin also moved to dismiss under Rule 12(b)(6), claiming that plaintiffs have not adequately pled a constitutional violation for *Bivens* purposes and that she enjoys qualified immunity from suit. (Def.'s Mot. to Dismiss at 13–15.) In order to survive a motion to dismiss under Rule 12(b)(6), the allegations stated in the plaintiffs' complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). The complaint must be construed in the light most favorable to the plaintiffs and "the court must assume the truth of all well-pleaded allegations." *Warren v. Dist. of Columbia*, 353 F.3d 36, 39 (D.C.Cir.2004). If a plaintiff fails to allege sufficient facts to support a claim, the complaint must be dismissed. *See Twombly*, 127 S.Ct. at 1965.

In determining whether a complaint fails to state a claim, a court must consider only facts alleged in the complaint, documents either attached to or incorporated in the complaint, or matters of which the court may take judicial notice. " '[T]he court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment.' " *Baker v. Henderson,* 150 F.Supp.2d 17, 19 n. 1 (D.D.C.2001) (citing *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 (D.C.Cir.1993)).

 Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The qualified immunity defense was recognized to help protect government officials from the burden of having to defend lawsuits based upon insubstantial claims. *Id.* at 817–18, 102 S.Ct. 2727. In *Bivens,* the Supreme Court provided that a "federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. at 389, 91 S.Ct. 1999. "For a public official to be liable for damages, that official must have violated a constitutional right, *and* that right must have been 'clearly established'—'the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.' " *Int'l Action Ctr. v. United States,* 365 F.3d 20, 24 (D.C.Cir.2004) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

 When assessing a public official's assertion of qualified immunity, a court must first ask whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [official]'s conduct violated a constitutional right[.]" *Brosseau v. Haugen,* 543 U.S. 194, 197, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (internal citation omitted). The D.C. Circuit has "supplanted the liberal pleading requirements of the Federal Rules with a heightened pleading standard whenever a plaintiff in a *Bivens* claim alleges an unconstitutional motive" because "substantial costs attend the litigation of the subjective good faith of government officials[.]" *Whitacre v. Davey,* 890 F.2d 1168, 1171 (D.C.Cir.1989) (citation and internal quotation omitted). Thus, the relevant constitutional right must be defined with some specificity—"[i]t does no good to allege that police officers violated the right to free speech, and then conclude that the right to free speech has been 'clearly established' in this country since 1791. Instead, courts must define the right to a degree that would allow officials reasonably [to] anticipate when their conduct may give rise to liability to damages[.]" *Int'l Action Ctr.,* 365 F.3d at 25 (citations and internal quotations omitted). In response to Martin's assertion that the plaintiffs have not pled an established constitutional violation with the required specificity, plaintiffs maintain that they have established that Martin violated their right of access to the courts. However, "[i]f . . . the plaintiffs have failed to state a denial of access claim, the complaint must be dismissed regardless of whether [the defendant has] qualified immunity[,]" and the more "complicated" analysis involving "the sometimes nuanced issues involved with qualified immunity" becomes "unnecessary." *Broudy v. Mather,* 460 F.3d 106, 116 (D.C.Cir.2006).

 The right of access to the courts has constitutional origins. *Id.* at 117 (stating that the Supreme Court has

"grounded the right at various times in different provisions of the Constitution" including the First, Fifth, and Fourteenth Amendments). The right guarantees that access will be "adequate, effective and meaningful." *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Supreme Court has recognized two types of denial of access suits. One is a "forward-looking" suit in which official action frustrates a plaintiff's ability to prepare and file a suit that has yet to be litigated. The other is a "backward-looking" suit in which official action has allegedly caused "the loss or settlement of a meritorious case . . ., or the loss of an opportunity to seek some particular order of relief[.]" *Christopher v. Harbury,* 536 U.S. 403, 413–14, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002); *Broudy,* 460 F.3d at 120–21. In the case of the backward-looking suit, such as the instant action, the "constitutional right of access to courts may be violated where the government covers up evidence and thereby renders a plaintiff's judicial remedy ineffective." *Mazloum v. Dist. of Columbia,* 442 F.Supp.2d 1, 7 (D.D.C.2006) (citing *Harbury,* 536 U.S. at 413–15, 122 S.Ct. 2179). "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief unobtainable in no other suit in the future." *Harbury,* 536 U.S. at 414, 122 S.Ct. 2179. To establish a backward-looking denial of access claim, plaintiffs must "identify in the complaint a non-frivolous, arguable underlying claim," show they have been denied a remedy for the underlying claim, and demonstrate that the defendant's actions have cut off the remedy. *Broudy,* 460 F.3d at 120.

### A. *Underlying cause of action*

"[T]he underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Harbury,* 536 U.S. at 415, 122 S.Ct. 2179 (further noting that access claims are "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). Plaintiffs have adequately alleged the underlying wrongful death cause of action in pleading their denial of access claim. They complain that "[o]n September 11, 2001, plaintiff[s] . . . lost a family member on an aircraft operated by United Airlines (UA) as Flight 175. Thereafter, and at all times relevant herein, plaintiff[s] brought [a] . . . suit against UA and others to redress the loss of life and other damages. . . . After commencing the underlying wrongful death cause of action, plaintiff[s], through . . . counsel, both through independent investigation and through formal discovery, sought evidence relevant to the case and sought to lawfully prosecute [their] case and claims. . . . Defendant engaged in the following activities, which actions . . . violated [plaintiffs'] constitutional rights by frustrating the underlying wrongful death litigation and harming or depriving plaintiff[s] of [their] right to a full and/or fair trial[.]" (Compl. ¶¶ 22, 27, 30.) *Cf. Harbury,* 536 U.S. at 418, 122 S.Ct. 2179 (noting that plaintiff failed to identify a predicate claim for denial of access in her complaint and only provided an underlying claim during appellate argument); *Mazloum v. Dist. of Columbia,* 442 F.Supp.2d 1, 7 (D.D.C.2006) (stating that plaintiff's complaint failed to meet *Harbury's* threshold requirement because it did not provide an underlying cause of action that had been rendered ineffective). Plaintiffs affirmatively state that Martin interfered with their pending wrongful death claim by, among other things, blocking access to evidence by improperly labeling evidence as SSI. Thus, they have met

the first prong of establishing a right to access claim.

### B. *Denial of a remedy and causation*

 To meet the remaining prongs of the test for a backward-looking claim, plaintiffs must demonstrate that Martin's conduct "completely foreclosed" the remedy that they seek in the wrongful death litigation, *Broudy*, 460 F.3d at 120 (citations omitted), by identifying a "remedy available under the access claim and [which is] presently unique to it." *Harbury*, 536 U.S at 417–18, 122 S.Ct. 2179. "Thus, if relief on the underlying claims is still available in a suit that may be yet be brought, . . . or [in] a presently existing claim, . . . the plaintiffs cannot meet this element of their claims." *Broudy*, 460 F.3d at 120 (citations and internal quotations omitted) (noting that in *Harbury*, the plaintiff's claim failed because she could still obtain damages through her tort claim and "[d]amages, therefore, were not a 'remedy . . . presently unique' to her access claim" (quoting *Harbury*, 536 U.S at 417–18, 122 S.Ct. 2179)).

It is not clear that Martin caused the remedies that plaintiffs seek in this ac-

tion—damages caused by weakened proof in the wrongful death action and injunctive relief barring Martin from further interference in that litigation—to be not addressable through their existing wrongful death case.[2] Plaintiffs seek to prove liability and damages in the wrongful death action using evidence made unavailable when TSA classified it as SSI. A remedy to challenge a final TSA classification order is provided by statute. An interested party may petition to modify or set aside such an order in an appropriate court of appeals. 49 U.S.C. § 46110(a); *see also Gilmore v. Gonzales*, 435 F.3d 1125, 1133 n. 9 (9th Cir.2006) (stating that claims that are "'inescapably intertwined with a review of procedures and merits surrounding [a TSA final] order'" must be brought before the courts of appeals (quoting *Mace v. Skinner*, 34 F.3d 854, 858 (9th Cir.1994))). Nothing stopped plaintiffs from challenging the TSA order in the courts of appeals.[3] Plaintiffs certainly have not shown that Martin cut off that remedy to obtaining the evidence they seek to aid the full proof of liability and damages in the wrongful death action.

---

**2.** Although the plaintiffs' two actions are against different defendants and involve different claims—the airline defendants in the wrongful death action and Martin in this *Bivens* action—"differences in legal theories for the same remedy cannot save a deprivation of access claim in light of *Harbury's* requirement that the remedy on an access claim be not otherwise available." *Mazloum*, 442 F.Supp.2d at 8 (citations and internal quotations omitted) (further providing that "allowing a plaintiff to pursue a deprivation of access claim seeking the same damages remedy as is available through other claims, based simply on the use of different legal theory, would vitiate the 'lost remedy' requirement"). Nor does the difference in parties necessarily undermine the requirement that the relief sought in the access claim be "unique." Although the *Harbury* plaintiff pled different claims against different government defen-

dants, the Supreme Court nevertheless held that the relief requested in a denial of access claim against one set of defendants could be obtained on an existing claim against another set of defendants. *Harbury*, 536 U.S. at 421, 122 S.Ct. 2179.

**3.** The court of appeals electronic docket for the D.C. Circuit reflects that plaintiffs' petitions for review were dismissed, in part without opposition. *See American Airlines, Inc. et al. v. Transp. Sec. Admin.*, No. 06–1093 (D.C.Cir., Orders dated July 25, 2006 and March 16, 2007). The parties never updated the record in this case regarding these and other developments (*see supra* note 1), or the status of any review petitions filed in the Second Circuit. (*See* Pls.' Opp'n, Ex. 2, Gov't Mem. in Supp. at 27 [docket # 19–03].) Such updates would have been helpful.

Plaintiffs also complain of testimony made unavailable in the criminal trial because of actions Martin took that Judge Brinkema found improper. Although Judge Brinkema barred affected witnesses from testifying in the criminal trial, plaintiffs have shown no such barring order in effect in the wrongful death action, or that Judge Hellerstein would somehow be bound by Judge Brinkema's action to enter such an order, or that such an order would be an inevitability in that civil action where money and not human liberty is at stake. Finally, while Judge Hellerstein has denied plaintiffs the opportunity to hold a conference regarding "an improper relationship between TSA and defense counsel" (Compl., Ex. B), he has not precluded plaintiffs from seeking injunctive relief against Martin.

Plaintiffs have not demonstrated that the access claim will address their injuries in a manner that the wrongful death action cannot. *See Harbury*, 536 U.S. at 421, 122 S.Ct. 2179. The relief requested by the plaintiffs for Martin's alleged actions may be available through existing avenues. "There is ... no point in spending time and money to establish the facts constituting a denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element[,]" *Harbury*, 536 U.S. at 415, 122 S.Ct. 2179 and the relief sought in the underlying wrongful death action has not been completely foreclosed. *See Broudy*, 460 F.3d at 122 (noting the availability of alternative administrative solutions to achieve the requested remedies and that by failing to exhaust their administrative remedies, plaintiffs could not show that their underlying claims had been completely foreclosed). Because Martin has not completely foreclosed remedies in the wrongful death action and the remedy sought in this *Bivens* action is not uniquely available, the plaintiffs have failed to state a right to access claim. Consequently, they have not alleged a constitutional injury for *Bivens* purposes, and Martin's motion to dismiss will be granted.

### CONCLUSION

While the plaintiffs have standing to bring this action, they have failed to state a constitutional injury necessitating relief. They have not shown that Martin foreclosed their opportunity to pursue their wrongful death litigation and have failed to state a claim for the predicate constitutional injury of denial of access to courts. Plaintiffs' complaint will be dismissed. An appropriate Order accompanies this Memorandum Opinion.