# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 14, 2010        Decided January 11, 2011

No. 09-5121

CYNTHIA ARTIS, ET AL.,
APPELLANTS

v.

BEN S. BERNANKE, CHAIRMAN OF THE BOARD OF GOVERNORS
OF THE FEDERAL RESERVE SYSTEM,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:01-cv-00400)

———

*Walter T. Charlton* argued the cause and filed the briefs for appellants.

*Kenneth M. Willner* argued the cause for appellee. With him on the brief were *Richard M. Ashton* and *Katherine H. Wheatley*, Associate General Counsel, Board of Governors of the Federal Reserve System, and *John L. Kuray*, Senior

Counsel. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: BROWN, GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Appellants are members of a putative class of secretaries employed currently and formerly by the Federal Reserve Board. They claim the Board systematically discriminated against them on account of their race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The district court dismissed the complaint for failure to exhaust administrative remedies. Because we conclude the secretaries completed informal counseling in a manner sufficient to give the Board an opportunity to investigate their claims, we vacate the district court's dismissal of their complaint.

I

Some of these secretaries appeared before us in 1998 when we affirmed the district court's dismissal of their first putative class action without prejudice, due to their failure to exhaust administrative remedies. *Artis v. Greenspan* (*Artis I*), 158 F.3d 1301, 1306–08 (D.C. Cir. 1998). Board regulations provide that "[a]ggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or disability must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 12 C.F.R. § 268.104(a). In *Artis I*, we held the putative class failed to complete counseling before bringing their claims of agency-wide discrimination. The would-be class agents, who were all employed in a single division of the

Board, had failed to "identify any agency-wide discriminatory personnel practices" in counseling. 158 F.3d at 1308. Instead, "[t]he four named complainants only addressed Board-wide complaints by way of asking for data on other secretaries." *Id.* at 1307.

While the Board's motion to dismiss was pending in *Artis I*, the same putative class initiated a new round of counseling—this time represented by secretaries employed throughout the Board. [1] The Board's Equal Employment Opportunity ("EEO") counselors held group counseling sessions on January 15 and February 13, 1997, attended by several of the secretaries and their counsel. No contemporaneous record of the group counseling sessions exists.

On January 17, 1997, in response to the Board's request for information at the January 15 group counseling session, the secretaries submitted fourteen identical copies of a document entitled "Resubmission of Class-Action Complaint." In that document, the secretaries alleged "a systematic and pervasive pattern of discrimination against African-American . . . secretaries" by the Board. In particular, the secretaries claimed the Board paid them lower salaries than non-minority secretaries, awarded them fewer and smaller bonuses, granted them fewer promotions, deflated their performance appraisals, denied them privileges and training that non-minority secretaries enjoyed, unfairly enforced leave procedures against them, and discriminated against them in the quantity and quality of work assignments.

---

[1] For example, Barbara Carter was employed in the Bank Operations Division, Donna Dorey by the Research and Statistics Division, and Donna Love-Blackwell by the Banking Supervision and Regulation Division.

Between approximately January 24 and February 18, 1997, the Board's counselors met individually with nine secretaries, including six who are named plaintiffs in this case. In the individual counseling sessions, the secretaries confirmed the general allegations in the "Resubmission," and some of them alleged specific instances of discrimination from personal experience. The EEO counselors prepared reports based on the notes they took in these individual counseling sessions.

The secretaries filed their administrative complaint with the Board on March 3, 1997, and it wound its way through the adjudicatory functions of the Board and the U.S. Equal Employment Opportunity Commission ("EEOC") without success.[2]

---

[2] The Board dismissed the secretaries' administrative complaint on July 23, 1997. The EEOC affirmed the Board's decision on November 18, 1998. Although we had filed our decision in *Artis I* almost a month earlier, the EEOC found "no indication in the record that the United States Court of Appeals for the District of Columbia Circuit has issued a decision on the matter," and concluded that dismissal was appropriate to avoid the risk of "inconsistent rulings by the United States Court of Appeals and the Commission." *See* 29 C.F.R. § 1614.107(a)(1), (3) ("[T]he agency shall dismiss an entire complaint . . . [t]hat . . . states the same claim that is pending before or has been decided by the agency . . . or that was the basis of a civil action decided by a United States District Court in which the complainant was a party . . . ."). For reasons that are not clear on the record before us, an EEOC Administrative Law Judge dismissed the administrative class complaint again on December 18, 2000—again on the ground that it was the subject of the present civil action, then pending in the district court. The Board "fully implement[ed]" that decision on January 30, 2001.

After we issued our decision in *Artis I*, the secretaries filed the underlying complaint in the district court.[3] As in *Artis I*, the Board moved to dismiss for failure to exhaust administrative remedies. The district court denied the motion and ordered discovery on the issue of exhaustion—specifically "whether plaintiffs have satisfied their obligation to engage in counseling" and whether "the administrative counseling process was a futile exercise." *Artis v. Greenspan*, 223 F. Supp. 2d 149, 155 (D.D.C. 2002).

Following five years of contentious discovery, the Board renewed its motion to dismiss in 2005. The district court granted the motion on January 31, 2007, holding the court lacked subject matter jurisdiction over the secretaries' claims because, as in *Artis I*, the secretaries had failed to exhaust the counseling requirement. *Artis v. Greenspan*, 474 F. Supp. 2d 16, 19 (D.D.C. 2007).[4]

---

[3] The operative complaint in this case was filed on February 22, 2001, after the Board's "final action" on the administrative complaint. *See* Dist. Ct. Docket No. 1. It was consolidated with a virtually identical complaint filed on August 3, 1999. *See* Dist. Ct. Docket No. 6.

[4] We pause to note that failure to exhaust administrative remedies is not jurisdictional under current precedents. The Supreme Court recently clarified that "a threshold limitation on a statute's scope shall count as jurisdictional" only "[i]f the Legislature clearly states" as much; otherwise "courts should treat the restriction as nonjurisdictional." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006). Because Title VII includes no such clear statement, we have recently said Title VII's exhaustion requirements are not jurisdictional. *See Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010); *see also Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006) ("The filing time limit imposed by Title VII, 42 U.S.C. § 2000e-16(c), is not a jurisdictional requirement but rather is similar to a statute of limitations." (quotation marks omitted)).

The secretaries filed a motion for reconsideration, repeating their argument that they had successfully completed counseling in the group and individual sessions, and proffering for the first time the declaration of secretary Kim Hardy, who recounted her ten-year-old recollection of the January 15, 1997 group counseling session. Dist. Ct. Docket No. 72. The district court denied the motion, holding Hardy's declaration was not "new evidence" under the standard governing a Rule 59(e) motion to alter or amend the judgment. *Artis v. Bernanke*, 256 F.R.D. 4, 6 (D.D.C. 2009). The secretaries appealed.

"A challenge to a dismissal for lack of administrative exhaustion is a question of law, which this court reviews *de novo*." *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 807 (D.C. Cir. 2010).

II

Title VII protects government employees, like private employees, from personnel actions that discriminate on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). To bring a civil action in federal court under this section, an employee must first be "aggrieved by the final disposition of his [administrative] complaint, or by the failure to take final action on his complaint." *Id.* § 2000e-16(c). Federal Reserve Board regulations modeled on the EEOC's regulations require Board employees to "consult a Counselor . . . in order to try to informally resolve the matter" before filing an administrative complaint. 12 C.F.R. § 268.104(a); *see* 29 C.F.R. § 1614.105(a). If the employee intends to file a class action, she must satisfy the counseling requirement on behalf of the class. *See* 12 C.F.R. § 268.204(b). "If a complainant forces an agency to dismiss or cancel the complaint by failing to provide sufficient information to enable the agency to investigate the claim, [s]he may not file a judicial

suit." *Wilson v. Peña*, 79 F.3d 154, 164 (D.C. Cir. 1996). The district court concluded the secretaries failed to satisfy this counseling requirement because they "declined to cooperate with the Board by failing to provide any meaningful information about specific instances of discrimination." *Artis*, 474 F. Supp. 2d at 19. We disagree.

A

The purpose of EEO counseling is clear from the text of the regulation: Counseling is designed to enable the agency and its employee "to try to informally resolve the matter" before an administrative charge is filed. 12 C.F.R. § 268.104(a), *quoted in Artis I*, 158 F.3d at 1306; *see Wilson*, 79 F.3d at 165 ("The purpose of the [administrative exhaustion] doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts."); *see also Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699, 711–12 (D.C. Cir. 2009) ("[U]nlike agency exhaustion in other contexts, the purposes of counseling and mediation are not to compile a record for judicial review but instead simply to afford the employee and the employing office an opportunity to explore and possibly resolve the employee's claims informally." (describing a similar counseling requirement in the Congressional Accountability Act)).

Where counseling produces "sufficient information to enable the agency to investigate the claim," that purpose has been served. *Artis I*, 158 F.3d at 1306 (quoting *Wilson*, 79 F.3d at 164). Thus, we recognized that "where a complainant has pleaded a nonpromotion claim to the agency, it is not her responsibility to identify the positions for which she applied." *Id.* at 1308 (citing *Mangiapane v. Adams*, 661 F.2d 1388 (D.C. Cir. 1981) (per curiam)). To hold otherwise would turn the

informal counseling requirement into a trap for unwary counselees rather than a step toward remediation, and it would violate the principle that "Title VII's exhaustion requirement should not be read to create useless procedural technicalities." *President v. Vance*, 627 F.2d 353, 362 (D.C. Cir. 1980).

An agency risks misusing the counseling requirement when it demands excessively detailed support for a class-wide complaint alleging a pattern and practice of subtle financial and professional discrimination. Unlike an allegation of overt harassment or a specific instance of retaliation against an individual employee, class-wide claims of systemically depressed salaries, performance ratings, advancement opportunities, and the like can often be proven only by a statistical comparison of the employer's treatment of the class to its treatment of non-minority employees. *See generally Segar v. Smith*, 738 F.2d 1249, 1267 (D.C. Cir. 1984) ("A plaintiff class seeking to show a pattern or practice of disparate treatment must carry the initial burden of offering evidence adequate to create an inference that employment decisions were based on a discriminatory criterion illegal under [Title VII]. This usually means providing evidence—often in statistical form—of a disparity in the position of members of the plaintiff class and comparably qualified whites." (citation, quotation marks, and emphasis omitted)). Usually, such an analysis will be possible only after the employees obtain data from their employer, whether informally or through discovery. It would be perverse to dismiss a complaint for failure to provide adequate detail in counseling when all of the relevant data is in the employer's exclusive control.

B

In light of the nature of the secretaries' claims, the information they provided collectively and in individual

counseling sessions satisfied the counseling requirement of 12 C.F.R. § 268.104(a). At the first group counseling session on January 15, 1997, the EEO counselor and the Board's lawyer met with approximately fourteen secretaries and requested more information about their claims. In response to the Board's request, the secretaries provided a list of "class allegations" in a document entitled "Resubmission of Class-Action Complaint." Copies of that document were signed individually by several of the putative class agents. The "Resubmission" alleged on behalf of the "named Complainants and the members of their putative class" that the Board discriminated against them by

> a.  Failing to pay class members at the comparable hourly rate or salary paid to non-class members who were no more qualified than were the class members.
> b.  Failure to pay the same amount of money for cash awards, merit increases, lump sum salary adjustments or other forms of bonuses to class members as was paid to comparable non-class members for similar performance. . . .
> c.  Failing to award class members cash awards, merit increases, special achievement awards, lump sum salary adjustments or other forms of bonuses as was done for comparable or inferior non-class members.
> d.  Failing to adequately and properly train class members as comparable non-class members were trained.
> e.  Maintaining certain positions for non-African-Americans and other positions for African-Americans.

f.      Maintaining certain facilities, within [the Board's] workplace, which are segregated and inaccessible for African-Americans.

g.      Failure to provide class members with equal amount [sic] of personal time on the phone as is afforded non-class members.

h.      Failure to provide class members with equal time away from the office for personal reasons as is afforded non-class members.

i.      Failure to treat class members equally with regard to utilization and enforcement of leave procedures and records as is afforded to non-class members.

j.      Disparate treatment with regard to distribution of work, both in regards to workload and quality of assignment.

k.      Failure to provide accurate Performance Appraisals, such as PMPs (Performance Management Programs) or its predecessors, for class members and non-class members, thereby creating a false discrepancy in the abilities of class members when compared to non-class members. African-Americans' PMPs are deflated and non-African-Americans' PMPs are inflated as a systematic practice.

[*l*.]      Failing and refusing, and continuing to fail and refuse, to promote Complainants on the basis of race.

All of these allegations were affirmed in individual counseling sessions. Class agents corroborated most of them with relevant examples of personal discrimination.[5]

Barbara Carter specifically addressed allegations (a), (d), (i), and (k). She told a counselor she was compensated less than comparable white employees because she had been "redlined since the early 70's." Carter also said her performance appraisal was deflated in the years 1993–1996 and she was not permitted to take the classes she was told were necessary to achieve an outstanding rating. Carter said her supervisor, Joyce Zigler, failed to provide her with equal personal leave when Carter was working in the Research and Statistics Division.

Donna Dorey specifically addressed allegations (e), (i), (k), and (*l*) in her individual counseling session. She alleged that "Karen See, a white female, was preselected for a position" and groomed for it even though she lacked a college degree, which the job posting purported to require. According to Dorey, the job posting's degree requirement, which was waived for preselected white candidates like Karen See, discouraged Dorey from applying because she lacked a degree. Dorey also alleged specific incidents of discrimination by her supervisor, McKosh. She said McKosh denied her request to change her work hours so she could attend college courses, but

---

[5] The only general allegations that were not directly corroborated by the specific allegations of class agents in counseling were (b), (f), (g), and (j), relating to the *amount* of money awarded in bonuses to class members, segregated facilities, discriminatory telephone usage policies, and unfair distribution of work. This appeal does not require us to decide whether these four claims are sufficiently related to others for which the secretaries exhausted administrative remedies such that they are proper subjects of the civil action. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010).

allowed a white employee to change her hours to join a vanpool. Dorey also claimed her leave requests are treated differently from those of white employees. She said McKosh once "humiliated her in front of the Board" by describing the circumstances of one particular request for leave. Dorey says her managers discussed her leave requests with human resources and shared personal information with other employees including Rena Carlton, an employee relations specialist. Dorey also claimed that the Board's EEO Director, Sheila Clark, and EEO Counselor, Millie Wiggins, discouraged her from filing a previous EEO complaint alleging discrimination in her performance rating.

Donna Love-Blackwell specifically addressed allegations (c), (e), and (*l*). She claimed she had never received a cash award as white secretaries had, despite her excellent performance ratings. Love-Blackwell also said she had applied without success for other positions and that "this type of movement is easier for nonminorities" who are "primped for positions."

Yvette Williams specifically addressed allegation (h). She claimed she was permitted to work out only within a prescribed lunch hour, while non-minorities were allowed to take their lunch break at any time.[6]

---

[6] The secretaries also argue statements secretary Kim Hardy allegedly made at the January 15, 1997 group counseling session should have been included in a counseling report and would confirm that she satisfied the counseling requirement. The district court did not abuse its discretion in refusing to consider Hardy's 2007 declaration. Her recollection was previously available to the secretaries, so her declaration was not an appropriate basis for a motion to alter or amend the judgment. *See Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006).

Despite this evidence in the notes of the Board's own counselors, the district court found the secretaries "fail[ed] to provide any meaningful information about specific instances of discrimination." 474 F. Supp. 2d at 19. To the contrary, the secretaries argued consistently that they "counseled fully and completely to the extent allowed by the Board." Dist. Ct. Docket No. 42, at 7. Their response to the Board's motion to dismiss incorporated by reference the previously filed counselors' reports. *Id.* at ii. In a motion for reconsideration, the secretaries directed the district court's attention to individual counseling reports, including those of Carter, Dorey, Love-Blackwell, and Williams, and quoted them at length. Dist. Ct. Docket No. 72, at 2–3, 17–28. As the Board admitted in response to that motion, "[t]hese reports . . . have previously been filed with [the district court] by both plaintiffs and defendant on numerous occasions and their contents have been exhaustively discussed in the parties' pleadings." Dist. Ct. Docket No. 73, at 2. The Board therefore conceded that the evidence of successful counseling that is now before us was properly before the district court.

Considered together, the secretaries' written description of their class allegations and their individual anecdotes of disparate treatment were sufficient to give the Board an opportunity to investigate and try to resolve their claims.

We affirmed the dismissal in *Artis I* because the four named plaintiffs each belonged to a single division of the Board and therefore could not establish commonality with the Board-wide class or "identify any agency-wide discriminatory personnel practices . . . despite the division-level decision making." *Artis I*, 158 F.3d at 1308. We noted that "[i]f secretaries (perhaps even one secretary) outside of the Legal Division had agreed to pursue counseling, the ALJ might have had a basis on which to find specific facts that are common to

the class." *Id.* (quotation marks omitted). That case is now before us. The secretaries' class status is relevant to counseling only in that it allows a representative plaintiff to satisfy the counseling requirement on behalf of similarly situated class members. *See* 12 C.F.R. § 268.204(b) ("An employee or applicant who wishes to file a class complaint must seek counseling and be counseled in accordance with § 268.104."). Like any other plaintiff, a class representative must simply provide "sufficient information to enable the agency to investigate the claim." *Artis I*, 158 F.3d at 1306 (quoting *Wilson*, 79 F.3d at 164). Thus, the entire class exhausted administrative remedies by virtue of the class agents' successful completion of counseling.

## C

On appeal, the Board argues that whatever counseling did occur was untimely. Under the Board's regulations, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action," unless she was unaware of the time limits or unable to meet them. 12 C.F.R. § 268.104(a). The Board now contends the secretaries' complaint is based on events that took place more than 45 days earlier or events for which the secretaries failed to "provide any time period." Appellee's Br. 27. Although we are skeptical of this defense given the nature of the secretaries' claims, we need not decide the issue because the Board waived the time limitation by failing to raise it in the district court. "A defense that has not been raised in a pleading, by motion, or at trial normally will be considered waived and cannot be heard for the first time on appeal." *Nat'l Treasury Emps. Union v. IRS*, 765 F.2d 1174, 1176 n.1 (D.C. Cir. 1985) (quotation marks and alteration omitted). Contrary to the Board's representation at oral

argument, Oral Arg. Recording 25:12–26, 25:47–53, the Board did not raise the time bar in its opposition to the secretaries' motion for reconsideration, *see* Dist. Ct. Docket No. 73. The Board failed to raise this defense in spite of the secretaries' explicit argument that individual secretaries, including Carter, Dorey, Love-Blackwell, and Williams, provided sufficiently specific information to satisfy the counseling requirement. *See* Dist. Ct. Docket No. 72, at 2–3.

D

The Board suggests another basis for concluding the secretaries failed to exhaust administrative remedies: their alleged failure "to engage in counseling in good faith." Appellee's Br. 10. The Board cites several instances of obstruction of the counseling process by the secretaries and their lawyer that it attributes to bad faith: Some if not all the secretaries refused to discuss personal experiences of discrimination in group counseling sessions. Some also refused to give specific examples of discrimination in their individual counseling sessions, despite the Board's request for details. Finally, the secretaries' counsel refused to agree to an extension of the 30-day counseling period so the Board could consider his request for statistical data and "obtain the information if appropriate." Assuming the Board accurately perceives a lack of good-faith cooperation in this conduct, the secretaries nevertheless satisfied the administrative counseling requirement.

The counselees' alleged bad faith is relevant only to the extent it "completely frustrat[ed] the agencies' ability to investigate complaints." *Blackmon-Malloy*, 575 F.3d at 713–14; *see Wilson*, 79 F.3d at 165. As we have explained, the Board was not so stymied. Despite their lawyer's counterproductive advice, the secretaries managed to convey

much more than "bare 'notice' of the basis of [their] complaint." *Artis I*, 158 F.3d at 1306. Doubtless other class agents were not as forthcoming as Carter, Dorey, Love-Blackwell, and Williams. But this is irrelevant to the administrative exhaustion issue, since a single class agent may satisfy the counseling requirement as to the entire class. *See Blackmon-Malloy*, 575 F.3d at 704 ("Under the doctrine of vicarious exhaustion, each individual plaintiff in a class action need not exhaust his or her administrative remedies individually so long as at least one member of the class has.").

## III

As the Board admits, the administrative counseling requirement is "not a difficult burden to meet." Appellee's Br. 13. The secretaries fulfilled the purpose of 12 C.F.R. § 268.104(a) by advising the Board of the specific nature of their claims and offering corresponding allegations of discrimination against individual class agents. This was enough to permit the Board to investigate and try to resolve their claims. Therefore, we vacate the district court's order dismissing the secretaries' complaint and remand for further proceedings consistent with this opinion.

*So ordered.*